No. 12.—SEABORN C. BRYAN, trustee, &c. plaintiff in error, *vs.* GEORGE M. DUNCAN, defendant in error.

[1.] Where the will of a testator contained the following bequest: "I *lend* to my niece, Mary Edwards, one negro girl and her increase, Corboro, during my niece's natural life, and at her death, to the lawful issue of her body; and in case my niece Mary, should die without issue or a minor, then it is my will and desire that this negro girl, Corboro and her issue, should revert to my niece, Nancy, and in like manner to the lawful issue of her body:" *Held*, that the word *lend* was equivalent to the word *give*, and vested such an estate in the legatee to the property, as on her intermarriage, the marital rights of her husband would attach, and be liable for the payment of his debts.

[2.] Where a married woman petitioned a Court of Chancery, for the appointment of a trustee, to protect what she supposed was her separate property, and such trustee was appointed and accepted the trust: *Held*, that such judgment did not prejudice the legal rights of the husband to such property, who was no party to it, nor his creditors, nor a *bona fide* purchaser from him.

[3.] A trustee may purchase the trust property from his *cestui que trust*, who is *sui juris*, provided there is a distinct *bona fide* contract, ascertained to be such, after a jealous and scrupulous examination of all the circumstances, that the *cestui que trust* intended the trustee should purchase, and there is no fraud, no concealment, no advantage taken by the trustee, of information acquired by him in the character of trustee.

In Equity, in Dooly Superior Court. Tried before Judge WARREN, November Term, 1851.

The bill filed in this case, by plaintiff in error, as the trustee of Mrs. Mary Wallace, a *feme covert*, set forth that Wm. Britton, by his last will, made the following bequest:

" *Item.*—I lend to my niece, Mary Edwards, one negro girl and her increase, Corboro, during my niece's natural life, and at her death to the lawful issue of her body," with a limitation over, in case of her death without lawful issue.

Mary Wallace intermarried with Richard Wallace, and had issue, William S. Wallace. Richard Wallace being involved in debt, upon the petition of Mary Wallace to the Superior Court of Houston County, a trustee was appointed to protect the

said negro and increase, as the separate property of Mary Wallace. Afterwards, at April Term, 1841, George M. Duncan was appointed trustee, and accepted the trust, and retained possession of the property and its hire, until 1844, when he delivered up a portion of the negroes, retaining the remainder, under a claim founded upon a sale from Wallace and wife, to him. The prayer was for an account and the delivery up of the balance of the negroes, as trustee under the aforesaid appointment.

The answer of Duncan admitted the facts charged as above, but submitted that under the will of Britton, no separate estate was created in Mrs. Wallace, but that Richard Wallace, by his marital rights, was the true and lawful owner of the estate taken by Mrs. Wallace under the will.

The answer farther stated, that all the negroes claimed as trust property, were levied on as the property of Richard Wallace, and defendant, as trustee, interposed, or rather prosecuted a claim thereto, until the year 1844, when he was advised by his counsel, W. Poe, Esq. and H. G. Lamar, Esq. that the property was subject to the *fi. fas.* against Richard Wallace; that Richard and Mary Wallace, under the advice of the said counsel, then became anxious to sell a portion of the negroes and pay off the judgment, and thus secure the remainder of the property to Mrs. Wallace; that they urged on defendant to become the purchaser of five of the negroes, which he consented to do, and gave therefor a full price. By the advice of the said counsel, the bill of sale was made by Wallace and wife, to James E. Duncan, who then conveyed to defendant; the whole arrangement being made with the knowledge and consent of Mrs. Wallace, and being in every respect, fair and *bona fide.*

The answer farther stated, that the defendant had fully accounted for the hire, &c.

A great volume of evidence was submitted on the trial, the sum of which was, to sustain the answer of defendant, in whose favor the Jury rendered a verdict.

To the rulings of the Court upon this trial, exceptions were filed.

1st. The complainant objected to the admitting in evidence the bill of sale from Richard Wallace and wife, to James E. Duncan ; the bill of sale from James E. Duncan to George M. Duncan ; the *fi. fas.* against Wallace, paid off by Duncan ; a receipt of Mary Wallace for $737, in part for hire of negroes.

The Court overruled the objections, and to each decision exceptions were filed.

2d. Complainant objected to the reading in evidence the depositions of W. Poe, Esq. in reference to the advice and counsel given by him, as set forth in defendant's answer, on the ground that these were confidential communications.

The Court overruled the objections and complainant excepted.

3d. Complainant's counsel requested the Court to instruct the Jury as follows :

1st. That the receipt and acceptance of the property sued for as trust property, and the hiring of it as trust property, is conclusive as to the character of defendant's possession, and estops him from denying his character as trustee, or the title of Mrs. Wallace.

2d. That defendant is also estopped from denying his character as trustee and the title of Mrs. Wallace, by interposing a claim to the property and giving a claim bond.

3d. That when a trustee buys of his *cestui que trust*, the purchase, though not absolutely void, is voidable, and may be set aside at the instance of the *cestui que trust*, who has the option of vacating or affirming the purchase ; and it makes no difference that the sale was *bona fide*, and for a fair price, provided the *cestui que trust* makes the application within a reasonable time ; and in this case, the time runs only from the appointment of Bryan, she being under disability.

4th. That if the Jury believed from the evidence, that the defendant purchased from Mr. and Mrs. Wallace, the latter being his *cestui que trust*, himself, but procured them to make the bill of sale to James E. Duncan, his brother, and James E. Duncan conveyed to defendant, it is evidence of fraud, and the sale

should be set aside ; and where the sale is set aside on the ground of actual fraud, the purchaser is not entitled to a return of the purchase money.

5th. That the trustee cannot himself buy or purchase of the *cestui que trust*, the trust property to pay the debts which he holds against the husband of the *cestui que trust*, unless by the express and free consent of the wife, *cestui que trust*, which consent must be unequivocally shown; and not then, until the relation of trustee and *cestui que trust* is dissolved. And that a trustee of a *feme covert* will not be permitted to mismanage the trust estate so as to subject it to the debts of the husband; and a Court of Equity will follow the trust property into the hands of the holder, unless when found in the hands of a *bona fide* holder without notice of the trust.

6th. That the defendant, Duncan, cannot set up the title of Richard Wallace, if he had any, bought by the said Duncan, as a defence in the present suit; and complainant, to entitle himself to a decree, is not bound to do more than to show that defendant received the property as trust property; and if this fact is shown, the Jury should decree in this case, the return of the trust property to Mrs. Wallace, upon condition of the purchase money with the interest, being re-paid, and the defendant paying the hire of the negroes which accrued, and for which he is liable ; and that defendant is liable for the hire of the negroes from the time he was appointed trustee.

7th. That if the Jury believe from the evidence, that the bill of sale taken by Duncan, defendant, from Wallace and wife, through James Duncan, was intended as a mortgage merely, that the complainant may redeem the property under the circumstances of this case, on the re-payment of the money advanced by Duncan, with the interest on it, and that defendant should pay a reasonable hire for the negroes, and be decreed to return the same.

8th. If the Jury believe from the evidence, that the bill of sale was signed by Mrs. Wallace, under the influence, and at the request of her husband, or of her trustee, or of both com-

Bryan *vs.* Duncan.

bined, and not freely and voluntarily, that the sale should be set aside, and the property sued for delivered up, and the hire paid; and that the law presumes that the wife is at all times under the control of her husband, and the onus of showing she has acted voluntarily, is on the defendant. And if the sale is put aside upon this ground, the Jury should put the parties back where they were, giving the negroes to complainant, and allowing defendant to keep open his *fi. fas.* against Wallace.

9th. That if the Court should be of opinion that the will of William Britton was material in this case, that said will does not vest a fee simple estate in Mrs. Wallace, formerly Mary Edwards, in the negro Corboro and her increase, but constitutes a mere loan for life, under which she is entitled only to the use, as a personal benefit, of the negro and her issue, at the pleasure of the lender, and took no estate or title to the negro Corboro, or her increase, that she or her husband could convey to a purchaser.

10th. Defendant cannot charge and discharge himself by his answer; that he cannot by his answer in this case, discharge himself from his liability to account for the property he received as trustee, and the hire thereof, but must establish his disbursements, if any, by independent testimony.

The Court declined and refused to give these instructions to the Jury, except the 10th and last; and on the above stated nine grounds, charged the Jury as follows:

1st. The Court charged the Jury, that it could not charge upon the first ground as requested, but charges that the acceptance of the property sued for, by Duncan (defendant) as trust property, is conclusive as to his being trustee; but if afterwards, Wallace and wife became convinced that the property was not trust property, from the advice of counsel, that defendant is not estopped from disputing complainant's title to the negroes; otherwise he is. Having been advised by counsel, that it was not trust property, defendant might purchase it and take a good title, if Mrs. Wallace had also been apprised of the advice that it was not trust property, and the sale was a fair and *bona fide* sale.

2d. The affidavit and claim bond of Duncan, does not estop

him from denying complainant's title to the property, when the trustee and *cestui que trust*, under the advice of counsel, acted under the belief that it was not trust property, if no advantage was taken of Mr. and Mrs. Wallace to convince them it was not trust property, and Duncan had claimed *bona fide*, and afterwards acted under the advice given by counsel, and with a knowledge of this by him and Mrs. Wallace.

3d. The third request, is the law where the trustee purchases at public sale, or at private sale from himself. A trustee may purchase the trust property of his *cestui que trust*, under circumstances which would prevent its being avoided on terms. The trustee may deal with his *cestui que trust;* but if any advantage is taken—if the facts show a strong suspicion of fraud— the Jury may set aside the sale. And slighter evidence is required in this case to rescind the contract, than in an ordinary case; and Courts and Juries should scrutinize with care, transactions between trustee and *cestui que trust*, at the suit of the *cestui que trust*.

4th. The purchase, through James Duncan, is good, if Mrs. Wallace knew that George M. Duncan was taking the title through James Duncan. If there is fraud in the purchase, and the sale is rescinded upon that ground, the purchase money should be refunded. If, however, any advantage was taken by the trustee in the purchase, it would vitiate the purchase.

5th. If this was a trust estate, which in the opinion of the Court it is not, and Duncan purchased it without the consent of Mrs. Wallace, the sale should be set aside.

6th. If the property sued for here, was the trust property of Mrs. Wallace, Duncan could not set up the title of Richard Wallace against it; but this is not trust property.

7th. If the bill of sale relied upon by defendant, was a mortgage merely, complainant's bill should have been filed to redeem the property; but under this bill, the relief asked for could not be granted, as the bill does not set up a mortgage, so as to enable defendant to reply and defend himself against such a case.

8th. If there are any circumstances of fraud, the Jury may judge of them. In this case, the wife cannot be presumed,

without proof, to be under the influence of her husband, when there is no charge in complainant's bill, that she, Mrs. Wallace, had signed the bill of sale under the influence of her husband.

9th. The Court is of opinion that the will is material in this case. Under the will of William Britton, a life estate in the negro woman, Corboro and her increase, is given to Mary Edwards, now Mrs. Wallace ; and it is not now necessary for the Court to determine whether the remainder over is good or not. Under this will, Richard Wallace, the husband of Mrs. Wallace, by virtue of his intermarriage with Mary Edwards, took an estate for his wife's life in the negro Corboro, and her increase, which Richard Wallace could sell ; and it could have been sold by his creditors for his debts, under Mr. Britton's will.

The Court having charged as stated on the preceding grounds, then proceeded to charge the Jury farther :

That the purchase in this case from Mrs. Wallace is not, *per se*, void. There must be some evidence of fraud, and the bill does not sufficiently charge the fraud in this case. If Poe advised Mrs. Wallace and Mr. Wallace, and Duncan, that it was not trust property, then Duncan can purchase. It depends on whether the parties were advised that it was not trust property, and whether it was a fair and *bona fide* transaction, in this, that it was well understood by them, that the advice of counsel was, that it was not trust property.

To which charge, as given to the Jury, and refusal to charge as requested, solicitors for the complainant, in open Court, and during the trial of said cause, excepted.

Upon each of these several exceptions, error has been here assigned.

J. C. Mounger and G. R. Hunter, for plaintiff in error.

S. T. Bailey, for defendant in error.

*By the Court.*—Warner, J. delivering the opinion.

On the trial of this cause in the Court below, various excep-

tions were taken to the rulings of the Court, most of which, must necessarily depend upon the decision of the main and controlling question made by the record.

The great question in the cause is, whether the defendant, George M. Duncan, who was appointed trustee of Mrs. Wallace, of what was supposed to be her separate property, under the last will and testament of Wm. Britton, deceased, and who accepted the trust, is now *estopped* from setting up a title to the property derived from Mary Wallace, his *cestui que trust,* and her husband, Richard Wallace, according to the facts disclosed by the record before us ?

[1.] The first question to be settled is, whether that clause of William Britton's will, under which Mrs. Wallace derives her title to the slave Corboro and her issue, created and vested in her, a *separate* estate, to which the marital rights of her husband could not, and did not attach, on her intermarriage with him. The clause of the testator's will, under which Mrs. Mary Wallace claims Corboro and her increase, as *separate* property, is in the following words : "I *lend* my niece, Mary Edwards, one negro girl and her increase, Corboro, during my niece's natural life, and at her death, to the lawful issue of her body, and in case my niece Mary should die without issue, or a minor, then it is my will and desire, that this negro girl, Corboro and her issue, should revert to my niece, Nancy, and in like manner, to the lawful issue of her body."

Whether Mary Edwards (now Mrs. Wallace) took an absolute estate to the negro and her increase, or only a life estate, was not made a question on the trial, and we express no opinion as it regards that point. The question now made for our consideration and judgment is, whether a *separate* estate was created to the property bequeathed to Mrs. Wallace, so as to prevent the marital rights of her husband from attaching to it.

It is insisted by the counsel for the plaintiff in error, that this was a *loan* of the property by the testator to the legatee ; that the title thereto remained in his legal representatives after his death, and that no title vested in Mrs. Wallace. This is certainly a

very strange and inconsistent argument, to be urged by the counsel for Mrs. Wallace, who is seeking to make the defendant responsible as her trustee, on the ground, that this identical property is her *separate* estate, under the will of her father. If *no estate* to the property vested in her under the will, of course, she had *no separate estate* in the property. In our judgment, however, she took at least a *life estate* in the slave Corboro and her issue. The word *lend,* as used by the testator in this will, is equivalent to the word *give;* for the reason, that the testator evinces a clear intention to part with the *entire dominion* over the property bequeathed. After his death, the property never could have reverted to his executors. A *final* disposition of it is made by the testator. *Hinson and wife vs. Pickett,* 1 *Hill's Ch. R.* 38. The legatee, then, took at least a *life estate* in the property bequeathed, and there being no words in the will, creating any *separate* estate to the property in her, the marital rights of her husband attached thereto, and the same, by operation of law, became his property, and liable for the payment of his debts.

[2.] Taking this view of the estate created by the will of Wm. Britton in Mrs. Wallace, the next point made by the record is, that inasmuch as Duncan was appointed trustee by the Court of Chancery, on the motion of Mrs. Wallace, to protect this particular property, as her *separate trust property,* and having accepted the trust, he is now *estopped* from denying that it is her separate trust property; and therefore, he shall not be permitted to show that he has made a *bona fide* purchase of this property from Richard Wallace, her husband, with the *knowledge* and *consent* Mrs. Wallace, his *cestui que trust.*

Conceding as we do, that in a mere contest between the *cestui que trust,* and her trustee, for an account of the trust property, *without more* the trustee could not defend himself from accountability, by showing that some third person had a paramount title to the property in his hands, which he had received as trust property under his appointment, from his *cestui que trust;* yet, that is not the case made by this record. The record here shows that the property in controversy, was levied upon to satisfy sundry executions obtained against Richard Wallace, in favor of his

creditors; that the defendant, as the trustee of Mrs. Wallace, prosecuted a claim to that property, as provided by Statute, and during the pendency of that claim, he was advised by his counsel, that it could not be sustained in law, but that the property would be found subject on the trial—the same not being the *separate* property of Mrs. Wallace, under the will of her uncle. Acting upon this advice of counsel, an arrangement was made between the creditors of Wallace and the defendant, with the consent and approbation of Richard Wallace and his wife, that the defendant should purchase eight of the negroes, and pay the executions with the proceeds, so as to enable Wallace and wife to retain the balance of the negroes. Wallace and wife executed a bill of sale to James E. Duncan, for the negroes, with the knowledge and understanding at the time, that it was for the benefit of the defendant, who was the actual purchaser of the property from Wallace and wife. Subsequently, James E. Duncan conveyed the property to the defendant. The Jury have found by their verdict, that the purchase of the eight negroes by the defendant, was a fair and *bona fide* transaction, and that he has fully accounted for the use of the property while he held it as the trustee of Mrs. Wallace. The plaintiff in error makes two points in relation to this branch of the case. First, he insists that the defendant is *estopped* from setting up his title from Richard Wallace to the property, for the reason, as he alleges, that he received it into his possession as the *separate property* of Mrs. Wallace. Second, that considering it as the separate property of Mrs. Wallace, the sale of the property by her to the defendant, as her trustee, was void, especially as the sale was made through the intervention of a third person. Now, in relation to the first point, it is quite clear, we think, that the judgment of the Superior Court, appointing the defendant as trustee, and his acceptance of the trust, did not and could not, have *prejudiced* the rights of Richard Wallace, the husband, or his creditors, who were not parties to that judgment. The mere application, on the part of Mrs. Wallace, to have a trustee appointed, to protect what she may have *supposed* was her separate property, and the appointment of such trustee, did not divest the husband of his

title to the property, which he acquired by virtue of his marital rights.

The defendant derives his title to the property, not only from the husband, who was in fact, and in law, the owner of it, to the extent of his wife's interest; but he also derives his title from Mrs. Wallace, his *cestui que trust,* which involves the second proposition contended for at the bar.

[3.] Viewing this as the *separate* property of Mrs. Wallace, and that she held it *sui juris,* still it was competent for her, according to the facts stated in this record, to have made the sale of it to the defendant. In *Coles vs. Trecothick,* Lord *Eldon* holds, that a trustee may purchase from the *cestui que trust,* provided there is a distinct and clear contract, ascertained to be such after a *jealous and scrupulous examination of all the circumstances, that the cestui que trust intended the trustee should buy; and there is no fraud, no concealment, no advantage taken by the trustee, of information acquired by him, in the character of trustee.* 9 *Vesey,* 246. *Hill on Trustees,* 537. If this property was the *separate* property of Mrs. Wallace, as is contended, by virtue of the appointment of the defendant as trustee, she was, as to this separate property, *sui juris,* and might have disposed of it to the defendant, in the absence of all fraud, concealment, or advantage, on his part. It is true, that Courts of Equity will look with a jealous eye to purchases made by trustees of their *cestui que trusts,* although the latter may be *sui juris,* but we are not prepared to hold that such purchases are absolutely void, *per se.* As to the bill of sale having been made in this case, to James E. Duncan, we have only to say, that it was so made with the knowledge and consent of the alleged *cestui que trust.* It is not a case in which the instrumentality of a third person is invoked, for the purpose of blinding or deceiving the *cestui que trust, without* her knowledge, to enable the trustee to acquire the title to the trust property.

According to the facts disclosed by the record before us, neither the law nor the justice of the case, is with the plaintiff in error. The whole effort appears to have been, in the Court below, to exclude the true facts of the case, by relying on the

technical doctrine of *estoppel,* and by the operation of that rule, to make the defendant liable as a trustee for the *separate* property of Mrs. Wallace, which never was her separate property, but the property of her husband, and liable for the payment of his debts. In other words, after the parties had become satisfied it was not the separate property of Mrs. Wallace, she consented for the defendant to purchase it, and apply the purchase money in payment of her husband's debts, to which the property was subject, which he has done; and now she seeks to make him account for the property again to her, as her trustee, on the ground that he is *estopped* from denying that it is her separate property; not that it is in fact her separate property in law, but that the defendant cannot, by a technical rule, be permitted to deny it.

The defendant claimed title to the property by a *bona fide* purchase from Richard Wallace (in whom was vested the legal title) with the *knowledge* and *consent* of Mary Wallace, the alleged *cestui que trust,* she having joined her husband in making the bill of sale; so that in any view, the defendant has the legal trtle to the property; and in our judgment, from the record before us, the equitable title also. The Court below then, did not err in refusing the instructions asked, in view of the facts of this case, nor in the instructions given to the Jury. Although we might not be willing to indorse all the legal propositions asserted by the Court, without qualification; yet, so far as the same were applicable to the facts of this case, the plaintiff in error has no cause of complaint. From the view which we have taken of this cause, it follows that the bill of sale from Wallace and wife, to James E. Duncan, and from the latter to George M. Duncan, as well as the *fi. fas.* against Wm. Wallace in favor of his creditors, were competent testimony, and properly admitted in evidence. The receipt from Mary Wallace to the defendant as trustee, while acting as such, was properly admitted in evidence—her handwriting having been first proved.

The evidence of Washington Poe, Esq. was also properly admitted, for the purpose of showing that the defendant acted in *good faith* in making the purchase of the negroes. It is true, that a party who acts on the advice of cunsel in regard to his

legal rights, must act on his own responsibility; yet, in this case the advice was in accordance with the legal rights of the parties, and the defendant did right in following it. A Court of Equity, as a general rule, will sanction that which it would decree to be done, had the parties been before it.

The copy of the will admitted in evidence, was attached as an exhibit to the complainant's bill, and admitted by the defandant's answer, and we think, was properly admitted in evidence to the Jury.

Let the judgment of the Court below be affirmed.