Smith *v.* Williams *et al.*

89    9
101  497
89    9
127   87

1. A woman having married, borne children and died intestate, when by law the husband's marital rights could attach upon all the wife's property real and personal, and when he was her sole heir, her children took no interest in a legacy or devise to which, under her deceased father's will, she was already entitled at the time of her marriage.

2. That a husband who acquired land by virtue of his marital rights, or as the sole heir of his deceased wife, intended the land for his minor children at the time he reduced it to possession, and whilst in possession often so admitted and declared orally, would not make the land theirs, or fasten a trust upon it in their favor.

3. A married daughter to whom a portion of her father's estate was devised and bequeathed by him, having died intestate before he died, her children alive at the testator's death took under the will as her representatives. So much of their share of the estate as their father may have received for them in land, or invested in land, may be followed in the hands of persons now claiming under him, if the land in question can be identified as a part of the estate, or as proceeds thereof. Their title is subject, however, to defeat by prescription or any other defence applicable to such cases.

4. Where declarations recited by the witness and attributed by him to several persons would not be admissible as a whole unless all of them were made by one of the persons named, and the witness neither says they were all made by him nor specifies any which he, as distinguished from the other declarants, did make, the whole should be rejected.

5. The will directing that the lands be sold by the executors, and that the slaves be divided amongst the legatees, evidence that the slaves were actually divided in kind is not admissible to show, or as tending to show, that the lands also were divided in kind. The evidence has no such tendency, and is therefore irrelevant.

6. A judgment is not dormant where execution issued within seven years after its rendition, and where, since it issued, such an entry as the statute prescribes has been made in each and every period of seven years. A judgment rendered after June 1st, 1865, would become dormant by omitting either of these requisites.

March 31, 1892. Argued at the last term ; BOYNTON, Judge, presiding in lieu of LUMPKIN, Justice, disqualified.

Husband and wife. Wills. Legacies. Trusts. Title. Evidence. Judgments. Before Judge McWHORTER. Taliaferro superior court. August term, 1890.

Reported in the decision.

JAMES WHITEHEAD, by J. H. LUMPKIN, for plaintiff in error.

H. T. LEWIS, J. C. HART and C. HEARD, *contra*.

BOYNTON, Judge.

A recovery must be predicated upon a legal right. A verdict to be sustained must be supported by evidence and authorized by law. We do not think the verdict rendered in this case can be maintained under either of the above truisms. The plaintiffs in the court below, defendants in error here, claim that their right to the land in controversy is derived from the will of their grandfather, John W. Rudisill, who died in December, 1854, testate. Their father, H. D. Smith, one of the executors under the will, intermarried with two of testator's daughters, both of whom were legatees under the will. The first wife of said Smith, the mother of three of the plaintiffs, was in life when the will was executed, but died shortly before her father. Soon after the death of testator, said Smith married another of his daughters, who died in 1867 leaving six children, who are also plaintiffs. The plaintiffs in their petition allege that the land belonging to the estate of John W. Rudisill was

in 1857 divided by the executors among the legatees, and that their father received two shares thereof, one for the children of his first wife, and one share for the children of his second wife, "for it was agreed," as they allege in their petition, "by the executors and all of the legatees, that it was the true intent and meaning of the will that the children of deceased legatees should represent the parent in the distribution of the estate, and in this way H. D. Smith, their father, went into possession of two shares of said estate and held the same as a continuing subsisting trust for plaintiffs during his lifetime, or at least until the lands were sold by the sheriff." After a careful scrutiny of the will, we regard this construction of it as unwarranted. Neither the context of the will nor the facts disclosed by the record sustain the idea that the children of the second wife represented their mother in the distribution of her father's estate. She was a *feme sole* when the will was executed and when the testator died. The legacy bequeathed to her was without trust, condition or limitation, and consequently vested absolutely in her on the death of the testator, and she had a perfect title to the legacy when she married. She was living when land belonging to the estate was disposed of by the executors in 1857. It was therefore impossible for her children to have represented her *as deceased*, and take her legacy while still she lived, and some of them were not then *in esse*. The lands belonging to the estate were disposed of by the executors in 1857, and as a result of that disposition, H. D. Smith then went into possession of the tract known as the "Home" or "Bermuda" place; and in 1858 he purchased from John W. Rudisill, Jr., the mill tract, and he then went into possession of it under a deed conveying it to him in fee. It is claimed that he used, in paying the purchase price of this tract, a part of the legacy of his second wife. If this be true, then in that

way he reduced that portion of her legacy to his possession. In 1864 Smith purchased and went into possession of the Printup tract under a deed conveying it to him in fee. These three tracts make up the land in controversy, and from the dates above mentioned, H. D. Smith was in possession of the several tracts and used and controlled them in all respects as his own, gave them in for taxes and paid the same every year until sold by the sheriff in 1875.

1. From this statement of facts, it clearly appears that Smith reduced to his possession all of the interest which his second wife had in the land, whether acquired by purchase or division in kind. Under the law then of force, upon marriage the real as well as the personal property of the wife vested in the husband, and his occupancy of the land is evidence that he had reduced it to possession, even if that were necessary to the consummation of his right. 21 *Ga.* 161; Cobb's Digest, 294. If Smith's marital rights did not attach under the facts and law above stated—if he did not acquire title to his wife's legacy by marriage and the reduction of same to possession,—then the title remained in the wife, as there is no evidence whatever showing or tending to show that she ever disposed of her title in any way; and when she died in 1867, under the law as it then was, her husband was her sole heir, and on the payment of her individual debts, if any, was authorized to take possession thereof without administration. Code of 1863, §1711; 11 *Ga.* 67; 21 *Ib.* 161; 25 *Ib.* 624. The law making children joint heirs with husband on death of wife was not passed until 1871. Acts of 1871–2, p. 48; Code, §2484.

2. Having thus ascertained that Smith had, by his marital rights and inheritance, acquired a perfect title to all the interests and rights which his second wife had in the land, and that her children never acquired any

title thereto under the will, or any equity therein by the distribution of the estate, his often-repeated declarations made while in possession, to the effect "that the land belonged to his children ; that he received it for the children of his first two wives—he held it for his children " ; "I holding it in trust for the children, and intended they should have it," and placing some of his children temporarily in possession of parts of the land, was not sufficient to transfer the title from himself and vest the same in his children.   Title to lands must be evidenced by writing, and such declarations could not create for his children an express trust in the land, for "all express trusts must be created or declared in writing."   Code, §2310.   These children of the second wife had no beneficial interest in the land by the payment of purchase money or any part thereof, nor does the record disclose any right or equity in them to constitute a predicate on which to raise an implied trust by parol. Code, §2316.

It is insisted that the sheriff's sale was a contrivance between Smith and his third wife, the plaintiff in error, to prevent other creditors from seizing the land, and for the purpose of having her purchase it at the sale and hold it for the defendants in error, and to divide the same amongst them.   The record shows that the sale was resisted by affidavit of illegality ; by taking homestead ; and when brought to sale, the land was bought by the plaintiff in error, and the price paid was applied to an execution which she had purchased for a small sum, but paid for with her own money ; and the only promise she made was that the defendants in error could have it by paying back to her the money she had paid out for the land.   This they have never done or offered to do.   Smith recognized the legality of the sale, and that the purchaser had a legal title and possession under her title, and aided her in procuring a loan of money by

pledging the land as security. This would estop him from now setting up title, if he was alive. Whether it will estop his heirs, is a question we need not decide, as they do not claim in this suit as heirs at law. For these reasons, we think the verdict in favor of the children of the second wife contrary to both law and evidence.

3. The status and rights of the children by the first wife are materially different. She was a legatee under the will ; the legacy to her was "absolute and without remainder or limitation " ; she predeceased the testator, and had children living at the time of his death. Therefore, by operation of law, they did represent their mother in the distribution of the estate, because, "If a legatee dies before the testator, or is dead when the will is executed, but shall have issue living at the death of testator, such legacy, if absolute and without remainder or limitation, shall not lapse, but shall vest in the issue, in the same proportions as if inherited directly from their deceased ancestor." Code, §2462. Hence, if it be clearly shown that the land of the estate was divided in kind, and a share was allotted to the first wife or to her children, and such share was a part of the land in controversy ; or if Smith bought a part of the land involved in this litigation and paid for it with a part of the legacy to which these children were entitled, then they would be entitled to recover such tract or parcel of the land as may be identified as land allotted to them in the distribution, or as was bought and paid for with funds belonging to them, unless the defendant in the court below has acquired such a title by prescription, or otherwise, as will bar their right to recover.

4. The fifth ground in the motion for new trial alleges error in admitting in evidence the answer of a witness in which he says that he learned the facts therein from "others, Smith, and his wife's mother." The information obtained from Smith was competent evidence, but

what the witness learned from "others" and his wife's mother, was not. And it being doubtful whether all or what part of the answer was learned from Smith, it should have been excluded. Admissions to be received as evidence must be identified as coming from one whose admissions would be legal evidence in the case. That is not clearly done in this instance.

5. The will directs that testator's land should be sold by his executors, and his slaves divided in kind. An exemplification from the records of the ordinary's office showing that slaves had been divided in kind and assigned to the several legatees by lot, even if complete and regular, was not admissible to show that the land had been divided and allotted to the legatees in like manner.

6. The *fi. fa.* in favor of Sidney C. Shivers, and the one in favor of Cosby Connel, under which the Home or Bermuda place was sold, were each issued from judgments rendered in 1866, a levy by sheriff was entered on both in November, 1868, and again levied in July, 1875; so they were not dormant, because at no time did seven years elapse between entries, which would prevent dormancy. The *fi. fas.* in favor of Turner and S. C. Shivers under which the mill tract was sold, were both dormant, because the judgments from which these *fi. fas.* issued were rendered after June 1st, 1865, and no entry had been made on either, by a proper officer, for more than seven years prior to entry of the levy under which the land was sold. The decision pronounced in the case of *Turner* v. *Grubbs*, 58 *Ga.* 278, and reiterated in *Smith* v. *White*, 63 *Ga.* 236; *Mosely* v. *Sanders*, 76 *Ga.* 293, we think fully covers and sustains our ruling on this question.                    *Judgment reversed.*