## WALKER *v.* BROWN.

An equitable petition alleged that the plaintiff's father purchased a tract of land from another and received a bond for titles for the same, and died after having paid the greater part of the purchase-money. It was further

alleged that it was the purpose of the father, after the land was fully paid for, the same constituting all of his property (he having given all else that he owned to his other children) to convey it to plaintiff in consideration of certain services which she had rendered after her majority in and about his household. After the death of the father the person from whom he had bought conveyed the land in fee simple to the defendant, who is now in possession, and who purchased with a full knowledge of all the facts above stated. The prayer was, that the conveyance to the defendant be declared to create an implied trust in favor of the plaintiff to the extent of a three-fourths undivided interest in the land, and to such an extent defendant hold the legal title as trustee for the plaintiff; that plaintiff and defendant be declared to be tenants in common of the property in the proportion stated; that the property be partitioned by a sale and division, and if upon a sale a sufficient amount should not be raised to pay the defendant and petitioner their shares respectively, the defendant be first paid the amount that he had paid out with interest, the remainder to be paid to petitioner. *Held*, that the petition set forth no cause of action, and was properly dismissed on demurrer.

Argued February 9, — Decided May 26, 1898.

Equitable petition.    Before Judge Felton.    Bibb superior court.    April 2, 1897.

A general demurrer to the petition of Lorena Walker against John M. Brown was sustained, and petitioner excepted. She alleged: In 1891 or 1892, her father, Nat Savage, now dead, contracted with Mrs. Valeria E. Clay, now a non-resident, for the purchase from Mrs. Clay of a tract of land in said county (described), for $300, to be paid in stipulated instalments, taking a bond for title in the usual form. At the time of his death, about January 29, 1893, Savage had paid $225 of the purchase-money, and had paid all the instalments as they fell due, according to the terms of the bond for title. The contract was entered into and the payments made by Savage for the sole use and benefit of petitioner, and he was trustee, for her sole use and benefit, of whatever equitable interest he had acquired in the land, up to the date of his death, by the payment of the $225; and it was his avowed purpose and intent to formally convey to her the legal title to the land whenever the payments of the purchase-money were completed so that the conveyance of the legal title to the property could have been legally demanded in accordance with the terms of the bond for title. The payment and acceptance of the $225 on

account of the purchase-price of the land, besides the fact that Savage went into possession of the land at the time of making the contract of purchase, and so remained until his death, and died seized of the same, created and vested in him as trustee for petitioner an equitable title in the land, in the proportion that the money paid bore to the whole purchase-price, the interest thus vested in him as trustee being a three-fourths undivided interest, the other fourth remaining in Mrs. Clay, who held and retained the entire legal title. The trust for petitioner's benefit was created by Savage on account of a valid consideration, in that she had for a number of years after her majority, and immediately prior to the death of said Savage, rendered service to and for his benefit in and about his household, and had done the work of a servant in his home and for his benefit, and had nursed him in sickness. He had, prior to the creation of said trust, granted and conveyed all his other real property to his children by another wife, the half brothers and sisters of petitioner. He acknowledged himself trustee for her benefit, and stated that he did so for the purpose of rewarding her for said services, and to make her even with his other children, for whom he had so provided. On or about January 8, 1895, Mrs. Clay, upon the payment to her by defendant of $75, the balance due by Savage on account of the purchase-price, executed to defendant, in disregard of and in fraud of petitioner's rights in the land, a warranty-deed to the land (copy of which is attached), with full knowledge on the part of Mrs. Clay and defendant of the facts before stated, without any right in defendant to have the title conveyed to him, without any privity in law, blood, or estate, authorizing him to thus take title thereto, and without any authority from petitioner or any one duly authorized to give authority for that purpose; and defendant entered into possession under the deed, and now holds possession of the land adversely. A badge of fraud in the deed is the recital therein that the consideration of the conveyance is $300 paid by defendant to Mrs. Clay; whereas in fact only $75 of that sum was paid by him. The deed did not convey to defendant any equitable interest in the land, further than an undivided fourth-interest, and though

defendant, by virtue of said conveyance, acquired and holds the legal title to the whole lot, yet there exists a tenancy in common between him and petitioner in the property, and she owns and is entitled to a three-fourths undivided interest in the same; said deed of conveyance having created an implied trust in her favor to the extent already indicated, and he thus holding the legal title to that extent as trustee for her. She has no money, property or effects, and by reason of her poverty is unable to tender and pay Mrs. Clay the $75, balance due on the purchase-price, and then demand a deed to the lot; and were the money paid and accepted by Mrs. Clay, she could not now make title to petitioner, because of her conveyance to defendant; and she being beyond the jurisdiction of the court, it would be an unwarranted hardship on petitioner to require her to bring suit in a foreign jurisdiction for damages for a breach of the bond, or for the recovery of the $225 and interest from her,—an alternative hardship that furnished in part the basis for this equitable proceeding; nor, on account of her poverty, can she tender and pay to defendant the $75 and demand a deed from him to the land. She charges, on information and belief, that defendant is worth little or no property, and would be unable to respond to a general judgment against him for $225 and interest, should he dispose of the land by encumbrance or alienation; and for this reason, besides those heretofore stated, petitioner is entitled to an injunction against him, restraining him from encumbering or alienating the land until the final judgment of the court. By reason of the facts heretofore set forth, a tenancy in common exists between petitioner and defendant in said land in the proportion declared, and she is entitled to have her interest in the property set up and established by a decree declaring an implied trust as aforesaid, and to an equitable partition of the property; a proceeding at law for the latter purpose, under the circumstances, evidently being an inadequate remedy. She prays for relief accordingly, waiving discovery.

*Marion W. Harris*, for plaintiff.
*Anderson, Anderson & Grace*, for defendant.

Cobb, J. This case presents a contest between one of the children and heirs at law of an obligee in a bond for titles upon which the greater part of the purchase-money had been paid, on the one side, and on the other a person who, with notice of the outstanding bond for titles, had acquired title to the premises in controversy through a conveyance from the obligor of the bond for titles, such conveyance having been made, as alleged, in direct violation of the contract contained in the bond for titles. The father of the petitioner purchased the land in his own name, and it is to be presumed for his own use. The petitioner seeks to attach to this purchase a trust in her favor, by setting up that she had performed certain services for and on behalf of her father, and that it was the avowed purpose of her father in purchasing the land to hold the same for her benefit, the consideration being the services which she had rendered. Services rendered by a child even after majority are not a sufficient consideration to support a contract, unless there has been an express promise on the part of the parent to pay for such services, or the surrounding circumstances plainly indicate that it was the intention of both parties that compensation should be made. *O'Kelly* v. *Faulkner*, 92 *Ga.* 522. While a parent may undertake to pay a child for services rendered by him, this must be done before the services are performed. If such services are rendered by the child to the parent without any express undertaking on the part of the latter to pay for them, and not under circumstances from which a promise will be implied, then it is to be presumed that such services were rendered on account of natural duty owed by the child to the parent, and an express promise made after the rendition of such services is entirely without consideration to support it. *Hudson* v. *Hudson*, 90 *Ga.* 581; Field on Parent and Child, §§ 69, 71. It not being pretended that the allegations in the petition make a case where the money of the petitioner was used by the parent in the purchase of the land and the title wrongfully taken in the parent's name, there can be no implied trust arising in favor of the child. The case not falling within the doctrine of implied trusts, if any trust was created at all it was an express trust; and there being no writing in which

the terms of the trust are declared, it fails as an express trust. Civil Code, § 3153. The whole purpose of the petition being to engraft upon the property which was bought in the parent's name a trust in favor of the child, and the facts alleged not being sufficient to create an express trust or raise an implied trust, the petition sets forth no cause of action in the plaintiff's behalf. If the obligor in the bond for titles, in disregard of the contract made with the obligee, has sold the property to one who was acquainted with all the facts and bought with full knowledge of them, then it may be that the legal representative of the deceased·obligee would have a right, upon tendering the balance due under the contract represented in the bond for titles, to compel a performance by the purchaser of the contract of·his predecessor in title; or it may be that if a petition was brought by the heirs at law of the obligee, with allegations showing that there were no debts and no necessity for an administration, their rights as heirs at law might be set up in such a suit; but what may be the rights of either the legal representative or of the heirs at law is not now decided. The petition makes no such case, and, as it stands, sets forth no cause of action, and there was no error in sustaining a demurrer to the same and dismissing it.

Judgment affirmed. All the Justices concurring.