### WHEELER, executor, *v.* WHEELER *et al.*

1. The petition as a whole was not subject to be dismissed on the grounds of demurrer urged against it.

(*a*) In so far as it sought to set up that the facts created an express trust by parol, it was demurrable.

(*b*) An allegation as to what the plaintiffs believed the defendant's testator would have done, had he lived, was demurrable.

2. The evidence did not authorize the direction of the verdict. There was no evidence showing any express trust, or any express contract between the plaintiffs and the testator of the defendant. Considered as an action for money had and received, it was barred at least as to most of the plaintiffs; and the verdict directed was for the full amount claimed to be due to all of the heirs of the former owner of the land, though one of them was not a plaintiff, but was the defendant in his character of executor of the person claimed to have originally been the debtor.

3. Where the evidence showed that a person who had conveyed land to another desired to convey the mineral interest therein to a different party, and was requested by one representing the proposed purchaser to get the deed which he had made, and did get it from the widow of his grantee, and her acquiescence in the sale was a material fact in the case, there was no error in admitting in evidence the statement of the persons who obtained the deed from the widow that the proposed vendor, who sent them, desired to convey the mineral interest in the land.

4. Under such facts, there was no error in allowing the widow to testify that, after she sent the deed to such person, she received information of the conveyance made by him. This was admissible, not to prove that

he made the conveyance, but to show the state of her knowledge in regard to it, where such knowledge was a material fact.

MARCH 11, 1913.

Equitable petition. Before Judge Fite. Dade superior court. February 5, 1912.

*W. U. Jacoway* and *Foust & Payne,* for plaintiff in error.

*J. P. Jacoway, H. P. Lumpkin,* and *T. J. Lumpkin,* contra.

LUMPKIN, J. Thomas B. Wheeler Sr. bought certain land from Brown in 1882, and took a warranty deed in fee simple thereto. In 1889, after Wheeler's death, Brown undertook to sell and convey the mineral interest in the land, though he had no title. About 1906 Brown died, leaving as his executor one of the sons of Wheeler. Administration was taken on the estate of Wheeler, and the administrator brought suit against the executor of Brown, seeking to recover the amount of purchase-money received by Brown for the mineral rights, together with interest thereon. This court held that he had no right of action. *Wheeler* v. *Wheeler,* 135 *Ga.* 603 (69 S. E. 1112). In the opinion Mr. Justice Holden remarked that "If Brown undertook to sell and convey the mineral interest in his own name in behalf of the heirs at law of Wheeler, if any right of action exists against Brown, or his estate, for the amount he received in making such sale, such right of action would be in such heirs." Thereupon the heirs brought suit in 1911, alleging, that Brown had received the purchase-price of $1,660 in trust for the widow and children of Wheeler, and held the sum, as he claimed, for the use and benefit of the widow and children of Wheeler, to be paid to them when the youngest child should become of age; and that he never denied during his life that the land was that of Wheeler or that his heirs were entitled to the money, but said he would make it all right when the youngest child should become of age. They claimed that this made a continuing trust, and that, as they respectively learned the facts, they relied on his promise. On the trial, the presiding judge overruled a demurrer to the petition, and directed a verdict for the plaintiffs. A motion for a new trial was overruled, and the defendant excepted.

1. Three theories are suggested by the petition as bases for the proceeding: (1) an express trust; (2) an express contract; (3) an implied contract, for money had and received for the use of the plaintiffs. An express trust can not be created by parol. Civil

Code, § 3733. So the case can not proceed on that theory. In so far as an express contract is claimed, the case must fail, because the children who were minors could not contract until they became of age respectively, and a parol contract of such a character would not be good as to most of the parties. Brown had no title to the mineral interest, and could convey none. But if he purported to act for the owners of the title, though without authority, and in that way received money, the owners could elect to reject the sale, or to treat it as valid and file a suit for money had and received, to recover the proceeds. Those who were of age could do this at once. Those who were not could no more elect than they could contract, until each became of age. The statute of limitations barred the widow and each of the children who, after arriving at the age of twenty-one, when he could make an election, waited for four years, unless there were legal reasons for tolling the statute as to them.

The petition was not demurrable as a whole, but was demurrable in so far as it sought to set up an express trust by parol agreement. The allegation in the ninth paragraph, as to what the plaintiffs believed that Brown would have done, had he lived, was subject to special demurrer. The demurrer did not set up that the action appeared to be barred by the statute, or that the demand was on its face stale; and that point arose only under the plea and evidence.

2. The direction of a verdict for the plaintiffs was error. No trust or express contract was shown. If any of the plaintiffs were entitled to recover, it was on the basis of money had and received for their use. They would not be entitled to both the mineral interest and the proceeds of its sale. They were obliged either to reject the unauthorized sale and keep the property, or to treat the sale as valid and claim the proceeds. As to those of age, this had to be done in a reasonable time. The right to proceed for money had and received for the use of a plaintiff does not alone constitute a continuing trust; nor does it create such a continuing fiduciary relation as will, without more, prevent the bar of the statute of limitations from attaching. The petition apparently sought to bridge over the lapse of years by alleging a continuing recognition of the rights of the plaintiffs, and a representation to them that Brown was holding the fund for them. But the evidence did not measure up to the allegations. Mrs. Wheeler, the widow of T. B. Wheeler, testified, that Brown was her uncle and also a cousin by

marriage, and she had great confidence in him; that, after the death of her husband, he sent to her for a deed to the land, which he had made to her husband, the messengers saying that Brown desired to convey the mineral rights; that she let them have it, and Brown made the conveyance of such rights; that, after she heard of the conveyance, she told "her brother" that she would rather "he hadn't done anything," but she did not complain to any one, and "recognized it was sold;" and that she did not complain to the people who bought the mineral interest, because Brown told her that "he laid himself liable to the penitentiary." No deed was executed by the widow or children to the purchasers from Brown. The heirs had remained on the land, and the purchasers had not taken possession of the mineral interest in this lot under the conveyance made by Brown, though mining on a lot contiguous to it. Another witness testified, that he acted for the purchasers; that "Mr. Brown said that the money he got for the mineral interest was to go to the estate of Thomas B. Wheeler, for the benefit of his wife and children; one time when he received a check for the purchase-money he said that he was going to carry it over to Mrs. Wheeler, but I don't know whether he ever did or not. The substance of what Mr. Brown told me was that it was being held for the heirs of Thomas B. Wheeler. I can't tell exactly, but I think it was a very short time before his death that I heard him talking about what he was going to do for Doug Cuzzort and Thomas Wheeler's children. . . I did say that it was my idea that he was getting the money for Mrs. Wheeler; for that was what he told me. I understood that he was getting the money for her and the children."

It will be readily seen that this falls far short of showing any express trust or express contract between Brown and the heirs of Wheeler. Considered as a suit for money had and received, there is nothing which would toll the statute as to each heir on arriving at majority. The evidence indicates that one of Wheeler's children was less than twenty-four years of age when the suit was brought, and that one had died, leaving a child who was still a minor when the case was tried; but whether the parent of such child was barred before death does not appear.

The defendant was I. H. Wheeler, the executor of Brown, who was also an heir of Thos. B. Wheeler. He was not a plaintiff.

Yet the presiding judge (inadvertently no doubt) directed a verdict in favor of the plaintiffs for the entire purchase-money received by Brown, with interest thereon. Whether or not the evidence might have sustained a finding by the jury in favor of one or more of the plaintiffs, certain it is that it did not warrant the direction of the verdict before us.

3. There was evidence to the effect, that when Brown was seeking to sell the mineral interest, he was asked by a person representing the proposed purchasers to hunt for the deed which he had made to Wheeler; that two persons went to Mrs. Wheeler for it, and received it; that it reached Brown's possession, and was caused to be recorded by him, and then he made a conveyance in his own name. This sufficiently showed that the persons who went for the deed were agents of Brown, to authorize the admission of evidence that, when they asked for it, they said he wanted to convey the mineral interest to a named party.

4. Nor was there error in allowing Mrs. Wheeler, one of the plaintiffs, to testify that, after sending the deed to Brown, she received information of the conveyance made by him.

*Judgment reversed. Beck, J., absent. The other Justices concur.*