## JONES *v.* JONES.

No. 14561.   July 8, 1943. · Rehearing denied July 19, 1943.

*H. G. Bell,* for plaintiff.

· *M. E. O'Neal* and *A. B. Conger,* for defendant.

Atkinson, Justice.   J. R. Jones filed a petition against Lillie Jones, alleging that on September 19, 1931, pursuant to an agreement between his father, J. R. Jones Sr., his sister Lillie Jones, and himself, the father executed to the sister a deed absolute on its face to approximately three hundred acres of land in Decatur County, to carry out a plan for the division of his property among his children; that in accordance with the agreement Lillie Jones was to make conveyances to the children upon direction of the father or request of the children; that under the terms of the agreement a described tract containing forty acres, being parts of lots 103 and 138 in the 19th land district, was designated as petitioner's part under the division. "That it was agreed and understood by and between petitioner and his sister, Lillie Jones, and his father, J. R. Jones, that his father was conveying this property to his sister to hold the title of same until either the father of petitioner or petitioner called on her to make a conveyance of the forty-acre tract described in this petition to petitioner, and · she accepted the deeds to this property and placed the same on record with that agreement and understanding. . . Petitioner shows that he took immediate possession of said forty-acre tract of land described in this petition, after the same was conveyed to his sister for him by his father, and has been in possession of the same since that date, and the same has been used by himself or through his permission to others to use the same, the lines and boundaries around said forty-acre tract of land having been run, established, and agreed to by J. R. Jones, the grantor, and petitioner and Lillie Jones to whom the land was conveyed for him with the agreement and understanding as set out above, and petitioner has been in open, notorious, quiet, and peaceful possession

of the property since the deed was made to defendant for him to said tract of land. . . Petitioner shows that his father had worked out a plan of division of his property among his children, and that he desired that his property be divided as near as possible among his children under said plan he had worked out, and that was one of the reasons why this deed was made to Lillie Jones to be conveyed by her to his various children at such time as he should direct and at such time as they might direct, and petitioner's father had implicit confidence in said daughter that she would make conveyances of said property as agreed upon between his father and his brothers and sisters."

It was alleged, that, while the deed from the father recited a consideration of one thousand dollars, in fact no money consideration was paid; that under the terms of this agreement Lillie Jones had already deeded to two of the (six) children, Ben O. Jones and Sam C. Jones, their part; that the father died in March, 1939, and that on numerous occasions since the execution of the deed on September 19, 1931, the plaintiff had requested his sister to execute to him a deed conveying the forty acres in question, but she had failed and refused so to do. He prayed, "that by proper decree of the court title be decreed to petitioner to the forty-acre tract of land described in the petition;" and for general relief.

The defendant denied the material parts of the petition. Upon the trial petitioner sought to establish the agreement by parol testimony. At the conclusion of the evidence the trial judge directed a verdict for the defendant.

■ The initial approach to a decision in the instant case requires an analysis of the petition, in order to determine whether the suit is seeking the specific performance of a voluntary promise, whether it seeks to recover the land on the basis of an implied trust, or whether it should be construed as seeking a recovery on an express trust. "The cardinal rule for the construction of a petition is to ascertain the intention of the pleader, and this is done by a consideration of all the allegations and prayers. *Cook* v. *Grimsley,* 175 *Ga.* 138 (165 S. E. 30), and cit." *Shaprio* v. *Steinberg,* 175 *Ga.* 869, 873 (166 S. E. 767). It would be an improper construction to apply the allegations as an attempt to obtain specific performance of a voluntary promise under the Code, § 37-804, which declares: "Specific performance will not be de-

creed of a voluntary agreement or merely gratuitous promise. If, however, possession of lands has been given under such agreement, upon a meritorious consideration, and valuable improvements made upon the faith thereof, equity will decree the performance of the agreement." While the petition alleges a meritorious consideration, and that the plaintiff took possession of the land and made valuable improvements on the basis of the agreement between his father, his sister, and himself, the petition contains no allegation of any separate and independent gift to him by his father, other than the gift accompanying the execution of the deed to the sister. If attempting to obtain specific performance of a voluntary promise had been the intention of the pleader, it would have been proper to make the personal representative or the heirs at law of the father parties defendant, and to have incorporated a prayer for specific performance. *Hadaway* v. *Smedley,* 119 *Ga.* 264 (46 S. E. 96); *Causey* v. *Causey,* 106 *Ga.* 188 (32 S. E. 138); *Hadden* v. *Thompson,* 118 *Ga.* 207 (44 S. E. 1001); *Looney* v. *Watson,* 97 *Ga.* 235 (22 S. E. 935). The petition alleged that "his father had worked out a plan of division of his property among his children," and in accordance with this plan "it was agreed and understood by and between petitioner, . . his sister, . . and his father, . . that his father was conveying this property to his sister to hold the title of same until . . called on . . to make a conveyance . . to petitioner." These allegations contain no statement of facts or circumstances authorizing an inference of an implied trust. See *Wood* v. *Rice,* 143 *Ga.* 647 (85 S. E. 838); *Stonecypher* v. *Coleman,* 161 *Ga.* 403 (131 S. E. 75); *Romano* v. *Finley,* 172 *Ga.* 366 (157 S. E. 669). "An implied trust is necessarily based upon an implied contract,—implied either in fact or in law." *Guffin* v. *Kelly,* 191 *Ga.* 880, 887 (14 S. E. 2d, 50); *Jackson* v. *Jackson,* 150 *Ga.* 544 (104 S. E. 236); *Hemphill* v. *Hemphill,* 176 *Ga.* 585, 590 (168 S. E. 878).

The whole tenor of the petition bases the right to have the title decreed in petitioner by virtue of the contract between the father, sister, and petitioner, made at the time of the execution of the deed from the father to the sister. All of the allegations are based upon this agreement, and it is expressly relied upon as an enforceable obligation. Such an agreement, if properly executed in writing, would establish an express trust, and would authorize a recovery

in accordance with the prayer of the petition. But upon the trial the plaintiff sought to establish this agreement, by oral testimony. In so undertaking the plaintiff attempted to assert an express trust by parol, and engraft it on a deed; and this cannot be done. "Trusts are either express or implied. Express trusts are those created and manifested by agreement of the parties. Implied trusts are such as are inferred by law from the nature of the transaction or the conduct of the parties." Code, § 108-104. "All express trusts shall be created or declared in writing." § 108-105. See *Roughton* v. *Rawlings,* 88 *Ga.* 819 (16 S. E. 89); *Smith* v. *Williams,* 89 *Ga.* 9, 13 (15 S. E. 130, 32 Am. St. R. 67); *Walker* v. *Brown,* 104 *Ga.* 357 (30 S. E. 867); *Smith* v. *Peacock,* 114 *Ga.* 691 (3) (40 S. E. 757, 88 Am. St. R. 53); *Eaton* v. *Barnes,* 121 *Ga.* 548 (49 S. E. 593); *Cassels* v. *Finn,* 122 *Ga.* 33 (49 S. E. 749, 68 L. R. A. 80, 106 Am. St. R. 91, 2 Ann Cas. 554); *Jones* v. *Jones,* 138 *Ga.* 730 (75 S. E. 1129); *Wheeler* v. *Wheeler,* 139 *Ga.* 604 (77 S. E. 875); *Jones* v. *Robinson,* 172 *Ga.* 746 (158 S. E. 752); *Alston* v. *McGonigal,* 179 *Ga.* 617 (176 S. E. 632); *Evans* v. *Pennington,* 180 *Ga.* 488 (179 S. E. 123). "An express trust cannot be engrafted on a deed by parol." *DeLoach* v. *Jefferson,* 142 *Ga.* 436 (83 S. E. 122); *Wilder* v. *Wilder,* 138 *Ga.* 573 (2) (75 S. E. 654); *Roach* v. *Roach,* 143 *Ga.* 486 (85 S. E. 703); *Bentley* v. *Young,* 147 *Ga.* 373 (94 S. E. 221); *Jenkins* v. *Georgia Investment Co.,* 149 *Ga.* 475 (3) (100 S. E. 635); *Clinard* v. *Clinard,* 169 *Ga.* 199 (149 S. E. 788); *Shaprio* v. *Steinberg,* 175 *Ga.* 869 (supra); *Beecher* v. *Carter,* 189 *Ga.* 234, 240 (5 S. E. 2d, 648). There being no written evidence creating the trust, and all evidence attempting so to do being oral, the court did not err in directing the verdict for the defendant.

■ In view of the foregoing ruling it is unnecessary to discuss in detail the grounds of the motion for new trial. Grounds 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, 21, 24, 25, 26, 27, 28, all designate verbal testimony designed to establish an express trust, and allege error in not submitting the case to the jury. Grounds 1, 2, 3, 4, 14, 22, 23 allege error in rejecting oral testimony to establish the express trust. Ground 19 is incomplete and presents no question for review. While we have examined the grounds of the motion and disposed of them as above indicated, many are incomplete and present no question for review. A ground of a mo-

497

tion for new trial should be complete in itself, and other parts of the record will not be looked to for the purpose of making the ground certain or definite. *Fidelity & Casualty Co.* v. *Geiger,* 142 *Ga.* 438 (83 S. E. 92) ; *Daniel* v. *Schwarzweiss,* 144 *Ga.* 81 (86 S. E. 239) ; *Bowen* v. *Smith-Hall Grocery Co.,* 146 *Ga.* 157 (4) (91 S. E. 32) ; *City of Jackson* v. *Wilson,* 146 *Ga.* 250 (4) (91 S. E. 63) ; *Pepper* v. *Pepper,* 169 *Ga.* 832 (2) (152 S. E. 103).

*Judgment affirmed.  All the Justices concur.*

# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

# SEPTEMBER TERM, 1943