Robert Freeman *vs.* Henry J. Cooper.

No. 33.—ROBERT FREEMAN, Executor, &c., plaintiff in error, *vs.* HENRY J. COOPER, Administrator, defendant.

[1.] A. being in debt to B. on a judgment, and his land being under levy to pay the debt, agrees with C., that he purchase the land at the Sheriff's sale, and that he (A.) have the privilege of buying it back, by paying what C. should give for it with interest: *Held,* that this agreement is not void as being against the policy of the Law in regard to judicial sales: *Held,* also, that after payment of the purchase money with interest, a Court of Equity will enforce this agreement in favor of A.'s administrators, against the administrators of C.

[2.] Less than seven years having elapsed between the accrual of the right of action, and the filing of the bill: *Held,* that the cause is not barred by lapse of time.

In Equity, in Bibb Superior Court. Decided by Judge POWERS, May Term, 1853.

This was a bill filed to Bibb Superior Court, May Term, 1853, by Henry J. Cooper, administrator of John Cooper, deceased, against Robert Freeman, executor of William Scott, deceased; setting forth the following facts: That in 1842, John Cooper, complainant's intestate, being in circumstances of pecuniary embarrassment; and a *fi. fa.* being levied, on a tract of land, which he owned in Bibb county, and on which he resided; said Cooper agreed with William Scott, defendant's testator, that when said land should be offered for sale by the Sheriff, Scott should become the purchaser; and would permit Cooper to have it back, on re-payment of the purchase money, with interest. The bill stated that this agreement was consummated to this extent, that Scott purchased the land on the 7th February, 1843, for seventy-five dollars, it being worth one thousand; that Scott bought it thus cheap, by representing to the bidders, that he was buying it for Cooper; though Cooper himself took no part in such representations.

Cooper remained in possession of the land, after the sale, until he was employed by Scott as an overseer, and removed to Scott's plantation, who took possession of the land of com-

plainant, agreeing to pay rent therefor.   The bill further stated, that in 1844, Cooper had repaid to Scott the amount paid by him for the land, with interest; and that Scott accepted the same, and promised to make titles to the land, to Cooper or his children, as he might direct; which, however, was never done.   The bill stated further, that the *fi. fa.* under which the land was sold, had been satisfied.   John Cooper died in 1849, and Wm. Scott in 1851; and the executor of the latter is still in possession of the land.   The bill prayed for a discovery and specific performance of the said agreement; and that the executor of Scott may be required to execute and deliver to the administrator of Cooper, good fee simple titles to said land, and to pay rent and damage, in cutting timber &c.

To this bill the defendant demurred, on the following grounds:

1st.  That the agreement set up by complainant is void, as being contrary to public policy and morality.

2d.  That it is void by the Statute of Frauds.

3d.  That the time which elapsed between said alleged agreement, and the filing of complainants bill, is such a lapse of time, as will prevent the interference of a Court of Equity.

The Court overruled the demurrer, and defendant excepts to that decision.

HALL & CAREY, for plaintiff in error.

STUBBS & HILL, for defendant.

*By the Court.*—NISBET, J., delivering the opinion.

[1.]  The first ground of demurrer is, that the agreement between Scott and Cooper, set up in the bill, is void, as being contrary to public policy and morality.   The agreement is, that Scott should purchase the land at Sheriff's sale, and Cooper have the privilege of buying it back, upon paying what Scott should give for it, with interest.   There are no creditors before this Court, complaining of it.   The bill exhibits but one creditor interested in the sale of the land; and that is the plaintiff in the execution under which it was sold.   And it farther shows,

that he has been paid. It is true, that it admits, that in 1842, when the agreement was entered into, the complainant's intestate, Cooper, was in circumstances of pecuniary embarrassment; and that his land was then levied upon by that execution. To what greater extent than that one debt he was embarrassed, does not appear. That debt, although small, was sufficient to create the embarrassment admitted in the bill; for a small debt which a poor man is unable to pay, without a sale of property, is capable of producing *embarrassed circumstauces.* We are obliged to infer that that debt was all that did trouble him.— To pay it, the officer of the law was about to sell the land upon which he lived. To prevent its sacrifice, he agrees with his friend, that he buy it, and give him the right of redeeming it. That friend does buy it at $70—it being, as the bill charges, worth $1,000. He pays back the purchase money with interest; and files this bill to compel him to abide his undertaking. To this bill he demurs, alleging that the agreement was immoral, and contrary to the policy of the Law.— We do not see wherein it was immoral; or how it was calculated to contravene the policy of the Law, as to judicial sales. The Law guards sacredly the purity and fairness of judicial sales; and will not tolerate combinations which are intended or calculated to prevent competition in bidding. The rights of creditors, of the defendant in execution, and of purchasers, all require such vigilant guardianship. It is not necessary to declare with particularity, what agreements a Court of Equity will refuse to execute, on the ground of their violation of the policy of the Law in this regard. It suffices to say, that this is not one of them. Questions of this sort, are made usually between creditors and the owner of the property offered for sale, where the former has managed to have it bought in, for his use, at an under value; or between the owner and purchasers, when the former has, by fraudulent means, caused the property to bring an overvalue; or between purchasers combining to put down competition in bidding. This case is different from all these. There is nothing in the bill which connects Cooper with any fraudulent purpose. His object seems

to have been to prevent the sacrifice of a valuable lot of land—brought to sale to pay a small debt—not by fraud, but by a fair purchase. The bill does charge, that Scott did make representations at the sale, by which he bought the land at a low rate; but it is not averred that Cooper stipulated for anything of this sort, or was in fact taking part at the sale. And if these representations had the effect of silencing competition, no one was injured; for the creditor was paid, and by the agreement, the land was to be the debtor's, when he should refund the purchase money with interest. Having paid it, the property belongs to him in Equity; and a Court of Chancery would subject it to his debts, if his estate is indebted; and if there is a recovery here, it will be liable to those debts, in the hands of the administrator. (1 *Story's Eq.* §293. 3 *Johns. Cas.* 29, *and note.* 6 *T. R.* 642. 3 *Vesey,* 619 *to* 624, *and note.* 12 *Idem.* 577. 2 *Bro. Ch. C.* 326. *Cowp. R.* 395. *Jeremy on Eq. Jurisp.* 390.)

The agreement being in relation to lands, and in parol, it is void unless relieved by part performance. There was not only part performance, but full performance by Cooper. The contract was, that he should re-purchase the land, by paying the purchase money advanced by Scott. He did pay back the purchase money, with interest. And to rebut the idea of this payment being on any other or different account, the bill charges, that it was made in pursuance of the agreement; and that it was recognized to be on account of the agreement by Scott. This is an agreement which equity will enforce, on the ground of part performance.

[2.] The time which elapsed before bringing the bill, is not great enough to constitute a bar in equity. The agreement was made in 1842, and the bill filed in May, 1853. Cooper's right of action, however, did not accrue until he paid the purchase money, which was in 1844. Scott died before the bill was brought. One year, on account of the administration, being taken out of the count, the bill was brought within less than seven years.

Let the judgment be affirmed.