No. 85.—JNO. H. GILMORE, plaintiff in error, *vs.* MARY A. JOHNSTON *et al.*

[1.] If an agreement has been carried partly into execution, its performance will be decreed, in order that one side may not take advantage of the Statute of Frauds, to be guilty of fraud.

[2.] Whoever has an interest in the decree, ought, if it is practicable, to be a party.

In Equity, in Lee Superior Court.    Decision on demurrer, by Judge LOVE, November Term, 1853.

The bill, in this case, was filed by Mary A. Johnston and her

next friend, John S. Johnston, her husband, and her two children, for whom a guardian, *ad litem*, was appointed, charging, substantially, that her husband, John S. Johnston, in 1844, being considerably indebted, and the executions being about to be levied on all his property, consisting of land and negroes and other property, (the greater portion of which, he received by virtue of his marriage with complainant,) and knowing, that at that time, the property would be sold at a great sacrifice, complainant and her husband, said John, applied to her brother, John H. Gilmore, and requested him to attend the Sheriff's sale, and become the purchaser, and after re-imbursing himself out of the property, to hold the remainder in trust, for the benefit of herself and her children; that Gilmore consented to this arrangement, attended the Sheriff's sale, announced to the bidders that he was buying the property for the benefit of complainants, and thereby was enabled to buy the land, worth $1,000 for $20, and negroes, worth several hundred dollars, for $50, and thus became the purchaser of all the property for a comparatively inconsiderable amount; that to enable Gilmore to pay off said debts and fulfil and carry out the complainant, John S. Johnston, the husband, placed in his hands other assets, from which the bill charged the defendant had realized the sum of $3200. The bill further charged, that Gilmore had sold the land for upwards of $1000, which, with the sum realized as above, was sufficient to re-imburse the defendant; that Gilmore had used the negroes since 1845 to 1853, the hire of whom, the bill charged, was of great value; that the negroes now in his possession were of great value; that he had allowed complainant the use of a portion of the negroes, but refused to acknowledge the trust as to the balance. The bill charged that Gilmore, by some means, had procured a release from John S. Johnston, for all claims in this behalf; but without the knowledge or consent of complainants, and in fraud of their rights. The complainants offered to account for any balance due Gilmore on the purchase, to allow him liberal compensation for his trouble and expense, and to do full equity to him in this behalf.

John H. Gilmore *vs.* Mary A. Johnston *et al.*

The prayer was for an account and a decree, ordering Gilmore to convey the property to a trustee, for Mrs. Johnston and her children.

To this bill, a demurrer was filed—

1st. Because John S. Johnston, the husband, was not made a party.

2d. For want of equity.

The Court over-ruled the demurrer, and this decision is assigned as error.

H. HOLT, for plaintiff in error.

L. WARREN, for defendant in error.

*By the Court.*—BENNING, J., delivering the opinion.

There are two questions in this case:

1. Is the suit barred by the Statute of Frauds?
2. Ought Johnston, the husband, to have been a party?

As to the first question. Let it be admitted that the agreement partly concerned land; and that it was neither in writing, or "manifested and proved" by a writing.

The agreement, however, only in part concerned land. It also concerned personalty and personal acts. In respect to this latter part, the Statute of Frauds cannot affect it. Does the Statute affect the agreement, as to the part which concerns land?

[1.] Sir Edward Sugden says: "Where agreements have been carried partly into execution, the Court will decree the performance of them, in order that one side may not take advantage of the Statute, *to be guilty of fraud*". (1 *Sug. Ven. & Pur.* 200.) This proposition is well supported by the authorities to which he refers, and by others. For one party to refuse to perform, after the other has performed, is, itself, a fraud.

Now, the agreement stated in the bill, was fully performed on one side. Johnston, the husband, actually did all that he

.promised to do. He let Gilmore get possession of the land and negroes in the manner in which it was agreed he should get possession of them. He did not object to Gilmore's getting that possession at nominal prices. In addition to this, he supplied Gilmore with other means, to be applied to the purposes of the agreement, from which Gilmore "realized" over three thousand dollars.

And the agreement was partly performed on the other side. Gilmore attended the Sheriff's sale—bid in the property; told the by-standers that he was buying it in for Mrs. Johnston and .her children.

Afterwards, he sold the land, having previously worked it and the negroes. He also hired out the negroes.

He also took from Johnston other means, to be applied to the payment of the debts. From these he realized over $3,000. He realized from the land over $1,000. From these two sources, therefore, he realized money enough to pay off the debts.—Nothing, therefore, was left for him to do, under the agreement, except merely to apply money which he had in hand to the payment of the debts, if already he had not paid them, and then to deliver the rest of the property, with a proper conveyance, to a trustee, for Mrs. Johnston and her children. Little, therefore, was wanting to a full performance of the whole agreement.

After the performance of so much of the agreement as this, if the Statute should allow Gilmore to refuse to perform the rest, it would allow him to be guilty of a fraud—a fraud by which he would acquire many thousands of dollars' worth of property, without having paid anything for it. The Statute, however, was made to prevent fraud; and, therefore, it will not, in such a case, allow a refusal to perform.

There is, therefore, notwithstanding the Statute of Frauds, equity in the bill.

This equity is not affected by the release which Johnston, the husband, executed to Gilmore. The rights of the complainants, Mrs. Johnston and her children, had vested, before that release

was made, and those rights could not be divested by the act of Johnston, the husband, a stranger.

The demurrer, therefore, as far as it is founded upon the ground of a Court of Equity, was properly over-ruled.

2. Should Johnston have been a party to the bill?

It was a part of the agreement that his debts were to be paid before the property should be conveyed, in trust, for his wife and children. It is not certain, from what appears on the bill, whether that has been done or not. If it has not been done, he has the right to object to the making of the conveyance, until it shall have been done.

[2.] It is safest, therefore, that he should be a party to the bill, unless the complainants can amend it, by alleging what will show that he no longer can have any interest in the property. As the bill stands, he ought to be a party to it. He must, therefore, be made one, or the bill must be so amended as to show that he has no interest in being such a party.

On this point, therefore, the judgment of the Court below is reversed; on the other, it is affirmed.