## HOLMES *et al. v.* HOLMES *et al.*

1. When an attorney for a defendant in fi. fa. purchases land of his client sold at a sheriff's sale and takes a deed to such land in his individual name from the sheriff, the title in the hands of the attorney stands affected with a trust in favor of his principal by operation of law, particularly in a case where an agreement is had between the defendant and his attorney that such purchase shall be made for the benefit of the defendant, and an announcement to this effect is made by the attorney while the property is being offered for sale.

2. When title to realty is thus passed into the hands of an attorney, and a parol agreement is had by the defendant and his children that the attorney shall make a deed to two sons of the defendant, so as to enable them to raise money by encumbering or selling a portion of the property sold, for the purpose of reimbursing the attorney the amount he paid for the benefit of the defendant, with the understanding among all the parties that, after such payment is so made, the property shall be held by the sons for the benefit of the defendant and his children during his life, and, after his death, shall continue to be the home of his daughters as long as they or either of them remain single, and then divided among the children, and when this agreement has been fully carried out by all the parties concerned and the estate has become ready for distribution among the children, under the terms of the agreement: *Held,* the law will imply a trust in the two sons in favor of the beneficiaries provided for in the parol agreement.

Argued March 21, — Decided April 19, 1899.

Equitable petition — demurrer. Before Judge Reese. Oglethorpe superior court. April term, 1898.

*William M. Howard* and *Samuel H. Sibley,* for plaintiffs.
*Hamilton McWhorter,* for defendants.

Lewis, J. The plaintiffs' petition as amended presents substantially the following case: Plaintiffs and defendants were children of James Holmes, late of Oglethorpe county, deceased. In 1873, upon a judgment obtained against James Holmes for about $200 or $300, a fi. fa. was issued and levied upon about two hundred acres of land belonging to the defendant and worth some $2,000. In the litigation which resulted in this judgment the defendant James Holmes was represented by W. G. Johnson as his attorney at law, and for professional services rendered by said Johnson the defendant was due him a fee of about $100. At the time of the judgment the plaintiffs and defendants were all of age. It was understood and agreed among them with their father, that an effort would be made

to redeem the land from the lien of the judgment at the sale to be had thereunder, for the purpose of saving the property, or as much thereof as possible, as a home for the father during his life, and also as a home for all his single daughters, four in number, as long as they remained single and lived upon the place; and that after the father's death and the marriage or abandonment of the place by all the daughters, the property should be sold and the proceeds divided equally among the children. An understanding was accordingly had with the attorney, W. G. Johnson, to bid off the property and to hold the sheriff's deed as security for his fee, and also for the amount he was to pay in satisfaction of the judgment and costs of sale. Accordingly, when the property was put up by the sheriff for sale, the attorney announced that if it did not bring too much he would bid it in for the defendant, and this deterred others from competing with Johnson in his bid for the property. It was knocked off to him for a small sum. It was agreed that Johnson should deed the property to two of the sons of James Holmes, the defendants in this case, who should raise the money necessary to pay Johnson by a sale or other disposition of some portion of the land. Accordingly a deed was made by Johnson to the two sons in 1874. As proceeds of the sale of part of the land, they paid Johnson about $350, which satisfied him for his fee and the money he had paid the sheriff. In compliance with the agreement between the father and the children, the father continued to live on the land until his death, the following year. After that the single daughters remained upon the land, occupying the same as their home, some of them subsequently leaving after their marriage, and two of the others occupying the place as a home until the year 1896, when one died and the other moved away. Under the parol agreement had with the family, the property was then ready for sale and distribution. During all this time one of the defendants had never occupied the premises, but the other remained upon the place. It did not appear from the petition, however, that there was any adverse holding by him against the other beneficiaries provided for in the parol agreement, until after the last daughter left the place. It was alleged that

the defendants then claimed that the property was absolutely theirs, and that they refused to carry out the agreement entered into with the other members of the family. Their insolvency is alleged; the plaintiffs charge that they are entitled to an equal share with the defendants in the premises, both under the agreement above set forth and by virtue of inheritance from their father; and they ask that the defendants be required to specifically perform their contract, and for general relief, etc. A demurrer to this petition was sustained by the court, which judgment plaintiffs assign as error in their bill of exceptions.

1. The special ground in the demurrer which seems to be relied upon by counsel for defendants in error is, that the "petition seeks to alter, vary, and modify the written deed of these defendants which conveys said land to these defendants in fee simple and established the title of said premises to these defendants." We will first consider the nature of the title of Johnson when he obtained the sheriff's deed to the land. Manifestly, under the allegations of the petition, Johnson was acting in the capacity of an agent of the defendant in fi. fa., the understanding being that he should purchase the land for the benefit of the defendant, so as to place the latter in a position where he might redeem his property. Growing out of this understanding and the declarations made by Johnson at the time of the sale, that he was acting for the defendant in the matter, the property brought far less than its value. It is a well-recognized principle of law that when one person as agent agrees to buy land for his principal, but takes the deed to himself, the case is not within the statute of frauds, but the title in the agent's hands stands affected with a resulting trust in favor of his principals by operation of law. See *Chastain* v. *Smith*, 30 *Ga.* 96. But apart from the specific agreement entered into between the attorney and the owner of the land, the law would imply such a trust growing out of the relation between the parties of attorney and client. See *Crayton* v. *Spullock*, 87 *Ga.* 326. Directly in point on the same question, see Pierce *v.* Gamble, 72 Ala. 341; Baker *v.* Humphrey, 101 U. S. 494; 3 Am. & Eng. Enc. L. (2d ed.) 340 (5), and authorities

cited.　The effect of Johnson's title, then, was simply to secure him for a debt, including his fee and the amount of money expended by him in relieving the property from the lien. Evidently, the equity of redemption was in the defendant, and he had a right to reclaim his land upon payment to Johnson of the amount due him.　The two sons received their deed from Johnson with full knowledge of all the facts as to how Johnson held the title to the property; indeed, they were parties to the identical agreement by virtue of which Johnson acquired the title.　Manifestly, therefore, they acquired no better title to the property then Johnson had, and this would be true if they had reimbursed Johnson with their own individual money.　But how much stronger is the case against them when it appears that Johnson was paid, not from their means, but from the proceeds of the sale of part of this identical land. This was equivalent to no consideration whatever passing from them to Johnson by virtue of which they obtained the paper title to this land.　Being paid for out of the property of their father, it was equivalent to his paying the purchase-money to secure the redemption of the balance of his land.　Without any agreement, therefore, as to what the sons should do with the property left on hand, it would necessarily follow that they would hold it in trust for him who really owned the equity of redemption.

2.　But as the parol agreement provided that they should hold the title until the property was ready for distribution under the terms of the contract, the next question which arises is whether or not such an agreement can be enforced and such a trust can be set up in land by parol evidence.　The contention of counsel for defendants in error, that to enforce such an agreement would be to permit one by parol evidence to add a stipulation or condition to a valid written instrument, is not tenable.　It is not the purpose of the plaintiffs to add to or vary the terms of this written deed from Johnson to the defendants.　On the contrary, that deed was drafted in accordance with the express stipulations of the parol contract.　It is always admissible, whenever the rights of parties require it, to inquire into the real consideration of the execution and delivery of a deed.　For in-

stance, although one may hold a deed to land absolute upon its face, and expressing payment of a full and adequate consideration as purchase-money for land, yet it is permissible for the grantor to show that the real consideration of the conveyance was a security for a debt, and that he still owns the equity of redemption in the land. If in the investigation of the consideration of such a conveyance it should develop that, while the legal title is in the grantee named in the deed, the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another, the law will imply a trust. (Civil Code, § 3159.) Section 3161 of the Civil Code declares that, "In all cases where a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, or the circumstances, or conduct of the parties, either to imply or rebut a trust." Now when we begin to inquire into the nature of the consideration of this deed held by the defendants, we find that they have no equity in the property by virtue of having paid any purchase-money whatever therefor. The case therefore presents itself as squarely within the oft-repeated adjudications of this and other courts, that when one holds the legal title to property, but the same has been paid for by or with the funds of another, the law implies a trust. See *Alexander* v. *Alexander*, 46 *Ga.* 284; *Scott* v. *Taylor*, 64 *Ga.* 506. In the latter case there was a bill filed by a sister against her brother to compel the conveyance to her of certain property to which he had taken the title in himself under a purchase made by her, to secure the payment of notes for purchase-money which had been given by him, and upon a verbal agreement to convey to her for life with remainder to her children on the payment of said notes, which she alleged had been made. It was held that it was not a proceeding to change the deed of the brother from a fee-simple to a conditional title, and that evidence of such agreement and payment was admissible without infringing the rule that it is not competent to engraft an express trust upon a written deed by parol proof. The authorities, therefore, relied upon by counsel for defendants, to the effect that parol evidence is never admissible to alter the terms or add to the conditions of a written

deed, have no application to the issue before us, and can have no reference whatever to a case where the law implies a trust, notwithstanding the fact that the legal paper title appears to be in another, free from any trust or conditions.

It may be contended, however, that the record in this case fails to show any payment by the plaintiffs of any part of the purchase-money for this land, or any other circumstances by virtue of which they can claim a beneficial interest in the property. This presents the only real difficulty in the case, but this does not answer the proposition that even if they had no rights by virtue of the voluntary agreement made in their interest, they have rights in this property as heirs at law of their deceased father. What payment was made, as before seen, was made out of his property, and therefore amounted to a payment by him. If there was a resulting or implied trust in favor of his estate, the plaintiffs, as his heirs at law, have an equal interest in the property with the defendants. Under the ruling of this court in the case of *McKinney* v. *Burns*, 31 *Ga.* 295, we think these plaintiffs have a right to a specific performance of the agreement set up in their petition. In that case it appeared that a son-in-law executed a deed to his father-in-law to a lot of land, at the same time releasing a debt to him, provided, he (the father) would convey the title in trust to the wife and children of the grantor. It was there decided that "equity will either enforce a specific performance of the agreement—it not being denied by the grantor—or decree a resulting trust to the land in favor of the grantor." It did not appear that the real beneficiaries provided for, to wit the wife and children of the grantor, had paid any consideration whatever for the equitable interest which they were to receive from the father-in-law, but they were mere volunteers, so to speak. The grantee, however, had paid nothing for the land, but the grantor had, and the latter not denying the parol agreement mentioned, it was accordingly in effect held that the grantee could not successfully resist an equitable petition to enforce a specific performance of that agreement. But apart from all this, equity will adhere less to technical rules touching the enforcement of family arrangements of this sort be-

tween a father and his children to dispose of property in a different manner from that which would otherwise take place. "The mere relations of the parties will frequently give effect to such 'contracts otherwise without adequate consideration.'" 7 Am. & Eng. Enc. L. (1st ed.) 808.

Under the facts alleged in this petition, no such laches is attributable to the plaintiffs as will bar their right of action in consequence of the long delay elapsing between the making of this agreement and the bringing of their suit. There was really no adverse holding against their interests until shortly before the institution of the suit. On the contrary, the occupation of the premises from 1873 until 1896 was entirely in accord with the parol agreement. The plaintiffs had the free right, which they actually enjoyed by the possession of the premises and occupation of the same for a home. There had not only been a part performance, therefore, but almost an entire performance of this family arrangement, and all that remained was a distribution of the property or its proceeds among those holding the real beneficial interest in the same, and the time for this had just ripened before the bringing of the action. We think there was equity in the original petition, even without the amendment, and certainly so when the amendment was filed showing more definitely the actual contract and the relations which the purchaser at the sheriff's sale sustained thereto. The judgment of the court sustaining the demurrer is accordingly

*Reversed. All the Justices concurring.*