## WOOD et al. v. RICE.

The allegations of the petition failed to show a valid express trust, or an implied trust, or a parol contract enforceable by the plaintiffs.  Accordingly there was no error in dismissing the petition on demurrer.
JULY 3, 1915.

Equitable petition. Before Judge Hawkins. Laurens superior court. May 23, 1914.

An equitable petition was filed by Mrs. E. E. Wood, R. B. Wood, J. N. Wood, Mildred Wood, and Evelyn Wood (the last two named being minors and appearing by their next friend, J. N. Wood Sr.) against W. B. Rice. The petition alleged, in substance, as follows: Mrs. E. E. Wood is the wife of J. N. Wood Sr., and the other plaintiffs are their children. Prior to 1901 J. N. Wood Sr. had been doing business for a number of years with Peacock, Hunt & West Company and their predecessors, naval-stores factors. Peter Peacock was a member of this firm, and was the uncle of J. N. Wood Sr. In 1901 J. N. Wood Sr. was managing the business in which he had for a number of years been engaged under the firm name of E. E. Wood & Company, said E. E. Wood being one of the plaintiffs in this case, and the wife of J. N. Wood Sr. E. E. Wood & Company became heavily indebted to Peacock, Hunt & West Company, the latter holding a mortgage on all the property of the former. This mortgage was foreclosed, and at the sale John E. Harris, a member of the firm of Peacock, Hunt & West Company, purchased the mortgaged property in his own name and received deeds to it. The property at that time was worth, upon a fair market valuation, ten thousand dollars. After the sale it was agreed between John E. Harris and J. N. Wood Sr., acting for the plaintiffs, that, for the benefit of Wood's family, and on account of the relationship of Wood to Peacock, and in view of his long business dealings with the Peacock firm, J. N. Wood Sr. should have the property back, for his wife and children, for the sum of $4,500, which was approximately one half of the mortgage debt for which it was sold. Upon this agreement being made, Wood Sr., acting for the plaintiffs, "arranged to procure" the money necessary for the purchase, except $500. For the loan of this $500 he applied to the defendant, W. B. Rice, who was the brother of Mrs. E. E. Wood, offering him seven per cent. interest. After going over the situation with Wood, Rice declined to make the loan, but finally agreed to see Harris, the purchaser at the sale of the mortgaged property, and "try to save the property . . to the said Mrs. E. E. Wood . . and her children." The next day after this agreement, Rice appeared at the home of Wood Sr., and told him that he had arranged to pay the entire amount of the $4,500, and

"would save the property for petitioners." Thereupon, on September 26, 1902, Harris executed a legal title to the property in question to Rice for the consideration of $4,500. At the time stated J. E. Harris "understood that it was the intention of petitioners, through the said J. N. Wood Sr., to get the said W. B. Rice to advance the necessary money to save the said property for petitioners if he would do so, and the said J. E. Harris understood and was under the impression, at the time he made the deed to the said W. B. Rice, that the said W. B. Rice was advancing the money in order to save the said property for petitioners. . . It was the understanding and agreement between the said W. B. Rice . . and J. N. Wood Sr., acting for petitioners, that the said amount of $4,500, so advanced as above mentioned by the said Rice, should be repaid to the said Rice with interest at seven per cent., and that when said sum had been so paid . . the said Rice was to have no further interest in said property, and was to relinquish all claim thereto in favor of your petitioners. There was no restriction in the agreement aforesaid that the said Rice should not sell off any part of the property so deeded to him by the said Harris, but it was understood and agreed that he should account to petitioners for all money so received by him in the sale of said property; and petitioners, who were living on said property at the time of the execution of the deed from the said Harris to the said Rice, remained in possession of said property, paying no rent therefor, upon the understanding and agreement had as aforesaid between the said J. N. Wood Sr., for their benefit, and the said Rice, that the said Rice should be paid back; and your petitioners remained in possession of the property described in the said deed from the said Harris to the said Wood for the said term of four years, on the agreement and understanding with the said Rice aforesaid that he was to be paid back his said loan of $4,500, with 7% interest, and that if he sold off any part of the land described in said deed, or any property described in said deed, that the purchase-money paid for said property should be applied by him on the said $4,500 loan, and that any excess which he received over and above the $4,500 should be paid to your petitioners." In pursuance of the understanding and agreement between J. N. Wood Sr. and Rice, above referred to, about November 17, 1902, Rice began to sell off the property to which he had secured title from Harris,

with the knowledge and consent of the plaintiffs, and continued to sell from time to time until he had sold the entire property and received the purchase-money therefor. The petition contains a detailed statement of each sale, with the consideration thereof, during a period extending from 1902 to 1910. J. N. Wood Sr., acting for the plaintiffs, acquiesced in these sales by Rice, relying upon the understanding and agreement, above referred to, that the sales were to be made for the purpose of paying back to Rice the $4,500 with interest. Plaintiffs believed, relying upon the understanding and agreement had with Rice, that any amount over and above the $4,500, with interest, arising from said sales, was received by Rice for their benefit, and would be paid to them by him. Plaintiffs allege that Rice has collected the sum of $13,000 over and above the amount necessary to pay back the $4,500 with interest, and continues to hold the same, and declines and refuses to pay to the plaintiffs this overplus, in violation of his trust and agreement. Plaintiffs prayed for a judgment against the defendant for $13,000, for an accounting and a decree for whatever amount a complete investigation might disclose to be due them.

The defendant demurred to the petition. The court sustained the demurrer, and the plaintiffs excepted.

· *Feagin & Hancock,* for plaintiffs. *Williams & Bradley, M. H. Blackshear,* and *J. S. Adams,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

While the contracts, agreements, or understandings alleged in the petition are not expressly stated to have been in parol, yet, from the petition as a whole, it may fairly be inferred that such was the fact; and counsel on both sides argued the case on that basis, each treating the alleged contract or agreement relied on as having been in parol. We will so consider it.

At the time when the alleged agreement was made, the property had been sold by the sheriff, and bought by Harris. Neither J. N. Wood Sr., nor his wife, nor his children had any right or interest whatsoever in or in regard to it. Harris, the absolute owner, was willing to let Wood repurchase the property for $4,500, but Wood was unable to raise the money. According to the allegations, Rice agreed to buy the property from Harris and pay his own money for it; and it was "the understanding and agreement" that the $4,500 paid by Rice was to be repaid to him with interest at seven

per cent., and that when this amount had been paid he "was to have no further interest in said property, and was to relinquish all claim thereto in favor of your petitioners." It was alleged that there was no restriction in the agreement preventing Rice from selling any part of the property, but that it was "understood and agreed" that he was to account to the plaintiffs for all money so received. Most of the property was realty. In so far as it was sought to create an express trust in favor of the plaintiffs, this could not be done by parol, especially not as to the realty. Civil Code (1910), § 3733. In the petition the expression is several times used that J. N. Wood Sr. did certain things, "acting for petitioners." Sometimes it is stated that he acted "for the benefit of petitioners." Considering the allegations together, it is apparent that it was not intended to allege that he was acting as agent for his wife and minor children, and that they were the real principals in the contract or agreement, but merely that he desired to obtain the property from Harris for the benefit of his family. Neither Wood nor any of the plaintiffs paid anything to Rice or to Harris. The cases in which an owner has conveyed land to another, and in which a resulting trust in favor of the grantor or his heirs has been declared on account of fraud or other circumstances, are not applicable. Neither are those decisions applicable in which a parol contract in regard to land has been held to be taken out of the statute of frauds by reason of full performance by the party seeking to enforce it, such as full payment of the purchase-money; or by such part performance on his part as would make it a fraud not to enforce the contract against the other party. Neither Wood nor Harris is here seeking to enforce any contract made by Rice with either of them. Stripped of all surplusage, the proceeding is an effort by Mrs. Wood and her children to enforce an alleged parol agreement made by Wood with Rice, by which the latter was to buy certain land and personalty, and, after receiving back the amount advanced by him, with interest, to deliver what remained, or its proceeds, if sold, to the plaintiffs. There was not even a direct allegation that Rice was to sell the property and reimburse himself, but it was alleged that "there was no restriction in the agreement aforesaid that said Rice should not sell off any part of the property so deeded to him by the said Harris, but it was understood and agreed that he should account to petitioners for all moneys so re-

ceived by him in the sale of said property." At another place it was alleged that after Rice should have received the $4,500 paid by him, he was to have no further interest in the property. It was also alleged that the petitioners were allowed to remain upon the land without payment of rent for four years. How their being permitted to use the land free of rent gave them any rights in regard to it, which they did not possess before, is not apparent. Rice was not in the position of an agent or attorney who buys property for his principal and takes the title in his own name. There are various rather indefinite allegations as to agreements, understandings, and impressions of parties, and as to Wood and his wife and children acquiescing in sales of parts of the property by Rice upon the understanding that they were being made for the purpose of paying back to him the $4,500 which he had paid to Harris for the land, with interest thereon, and upon the understanding and agreement that any surplus received by him would be paid to the plaintiffs. The allegations do not show an implied trust under the Civil Code (1910), § 3739. The plaintiffs' right to recover, if any, must at last rest upon the alleged parol agreement above indicated, together with the fact that Rice sold the property for more than the amount which he had paid for it, with interest. They seek to recover a judgment for the excess. There is nothing to take the agreement, as to the land, out of the statute of frauds.

An examination of the facts of the cases relied on by counsel for the plaintiffs, in which a person having title to land, or an interest in it, made a parol agreement with another in regard to it, which was so far performed as to take it out of the statute of frauds, or in which an agent or attorney bought land for his principal and took title in his own name, or in which the circumstances were such as to create an implied trust, will show that they are quite different from those here involved. Thus in *Freeman* v. *Cooper*, 14 *Ga.* 238, the owner of land which was to be sold under levy made an agreement with another person that the latter should purchase the property, and that the former should have the right to buy it back by paying to the purchaser what he gave for it, with interest. It was alleged that the person with whom the agreement was made bought the land at the sheriff's sale, and that the owner whose land was thus sold and bought in had repaid the amount of the purchase-money. In *Gilmore* v. *Johnston*, 14 *Ga.* 683, it was

alleged, that an owner of property, consisting of lands and negroes, received the greater portion of it by virtue of his marriage; that executions were about to be levied upon it; that, knowing it would be sold at a sacrifice, he and his wife agreed with her brother for the latter to attend the sheriff's sale, become the purchaser, and, after reimbursing himself out of the property, to hold the remainder in trust for the benefit of the debtor's wife and children; that the brother attended the sale, announced to the bidders that he was buying the property for the benefit of his sister and her children, and thereby was enabled to buy land worth a thousand dollars for $20, and negroes worth several hundred dollars for fifty dollars, and thus to become the purchaser of the property for a comparatively inconsiderable sum; that, to enable him to pay off the debts and carry out the agreement, the debtor placed in his hands other assets, from which he realized $3,200; that he had sold the land for about a thousand dollars, which, with the sum above mentioned, was sufficient to reimburse him; that he had used the negroes for several years, and was in possession of some of them which were of large value. In *Holmes* v. *Holmes,* 106 *Ga.* 858 (33 S. E. 216), an attorney for the defendant in execution purchased the land of his client at a sheriff's sale, and took a deed in his own name. There was also a parol agreement which was alleged to have been carried out by all the parties concerned, and it was further alleged that the estate had become ready for distribution among the children of the defendant in execution, in accordance with the agreement. In the opinion of the court it was said that it might be contended that the record failed to show any payment by the plaintiffs of any part of the purchase-money, or any other circumstance by virtue of which they could claim a beneficial interest in the property. Lewis, J., said: "This presents the only real difficulty in the case, but this does not answer the proposition that even if they had no rights by virtue of a voluntary agreement made in their interest, they have rights in this property as heirs at law of their deceased father." It was added that if, under the facts, there was a resulting or implied trust in favor of the estate of the decedent, the plaintiffs, as heirs at law, would have an interest in the property. No such facts are involved in the present case. See, in this connection, *Roughton* v. *Rawlings,* 88 *Ga.* 819 (16 S. E. 89); *Lyons* v. *Bass,* 108 *Ga.* 573 (34 S. E. 721).

What has been said above renders it unnecessary to discuss the ground of the demurrer based on the statute of limitations.

*Judgment affirmed. All the Justices concur.*