COLEMAN *v.* EASTERLING.

93   29
108  579

The allegations of the petition seem sufficient to take the case out of the statute of frauds, upon the ground of part performance; but there being no distinct and definite averment as to the balance due by the plaintiff to the defendant, or of a tender thereof, this court cannot say the trial court erred in holding the petition did not set forth a state of facts which would entitle the plaintiff to the relief prayed for, or in dismissing the action. Under the petition as it stands, it does not appear that the plaintiff's cause of action had fully ripened. Had he made a proper tender before filing his petition, and alleged this fact, the question presented would have been different.

November 20, 1893.

Equitable petition. Before Judge SMITH. Tattnall superior court. April term, 1893.

Coleman filed his petition alleging as follows: Two tracts of land in Tattnall county (describing them) were sold at sheriff's sale; one on July 4, 1882, under an execution from the superior court against petitioner in favor of Hardwick, Sheppard and McDonald being the purchasers at the sale, in consideration of $97.25; the other on the first Tuesday in September, 1882, to McGee,

for $50, under a mortgage *fi. fa.* in favor of Perry against petitioner. Deeds were made by the sheriff to the purchasers. McGee made his purchase for Sheppard and McDonald, to whom he afterwards conveyed. Copies of the sheriff's deeds are attached. Before said sheriff's sales petitioner had been for several years the owner and possessor of the lands, and the same were bought at the sheriff's sales by Sheppard and McDonald at his special request, he not then being able to meet the obligations; it being then and there agreed between him and them that they would hold the title as security for the money advanced by them in buying the same, and also as security for other indebtedness due them by him; and in consideration thereof they permitted him to have possession of said lands after the sheriff's sales, and manage and treat the same as his own in all respects, he paying taxes thereon up to the present time. Sheppard and McDonald, during all the time they held the title as security, openly announced they would not sell the lands to any one except with petitioner's consent, and with the understanding that he might have the right to redeem them by paying the amount of the debt due. He has paid them the amount due on the purchase of the lands, holding their receipts therefor, but owed them other money for which they still held the title by his consent; and in the fall of 1887 they demanded of him a settlement and payment of the amount due them, offering to reconvey the title to him, or convey it to any one whom he might name, to be held as security for the money borrowed to pay them. He induced Easterling to advance him the money by paying it direct to them and taking title from them as security therefor, and for any other sums which in the business between him and Easterling might become due to Easterling by him; and thereupon Easterling, at his special request and under said agreement which was in parol, took title to the

land from them on February 9, 1888, paying them the $332. Copy of this deed is annexed. The agreement between Easterling and petitioner was substantially as is set out in the paper annexed, marked exhibit D; and after the deed was made to Easterling, he stated to petitioner he would put the contract between them in writing, giving him the two years agreed on to redeem the land in, which was assented to by petitioner; but said contract was never made by Easterling, though petitioner is informed and believes that the paper annexed, the original of which is in the hands of McGee, attorney at law, was drawn by direction of Easterling by McGee as Easterling's attorney; and Easterling has admitted to petitioner, at divers times since February 10, 1888, and to others, that petitioner had two years in which to redeem the lands in accordance with the understanding between him and petitioner; nor did Easterling ever deny that such was the contract until several months ago and after the Savannah & Western Railway Company had surveyed its line through the land, greatly enhancing its value. In addition to the $332 paid by Easterling with interest thereon at eight per cent., petitioner also owed him about $280 with interest, the whole of which, it was understood and agreed between them, was to be secured to Easterling by the title to the lands which he obtained as above mentioned. In pursuance of the agreement between him and Easterling, petitioner proceeded in conformity therewith, in cutting, hauling and drifting timber to the mills named therein, delivering the same to Easterling who kept accounts of the same, and showed to petitioner, in the spring of 1888, that while the business up to that time had been unprofitable to petitioner, there was yet a balance in his favor, on the timber so delivered, of $48.40 which Easterling said he would pass to petitioner's credit; and it was then understood between them that petitioner was

not to be compelled to cut and deliver to him any more timber under the contract at the then prices, it being an unprofitable business. Besides the $48.40 there are various other amounts due him by Easterling to be put against his indebtedness to Easterling, in the way of overcharges, some of which have been admitted by Easterling, and for other items, the whole amounting to about $125. He has never been able to get a full accounting with Easterling, but offered, about October 16, 1889, to pay him, upon an accounting between them, all the money due him by petitioner, which Easterling then declined, the offer being coupled with the demand on petitioner's part to have the title to the lands conveyed to him by Easterling, Easterling stating that he was willing to receive payment of the amount due him outside of the $332 besides interest named in the deed, but would not receive the $332 and interest and make title as demanded. Petitioner is in possession of the land and has been for several years before 1882 and since, has annually paid the taxes on the same, has made leases upon the same during 1889 for turpentine purposes, and has had a tenant on the land cultivating a portion of it, the land lying on either side of petitioner's residence which is owned by him, and he exercising acts of ownership continuously over all of it. The land is worth about $1,600, Easterling having offered to buy it from him shortly before the time he took title from Sheppard and McDonald, and to pay him $1,000 for it, and since then it has increased in value because of the location of the railroad. He has done all he could in order to comply with his contract with Easterling in good faith, and has been and is ready to come to an accounting with him and pay him all he owes him, but Easterling refuses to receive it, sometimes declaring he is under no obligation to make title, and sometimes that he is waiting for the two years to expire

when he will dispose of the land as he sees fit. Petitioner prays, that Easterling may bring his deed into court; that he be enjoined from parting with the title to any one other than petitioner; that he be decreed to specifically perform his contract and make deed to petitioner, upon payment by petitioner to him of the money found to be due by petitioner; and for general relief.

Exhibit D was in form a contract between Easterling and Coleman, dated February 10, 1888, but unsigned. It states : In consideration of promissory notes this day made and delivered to Easterling by Coleman, for stated amounts with interest, due two years after date, Easterling has bargained to Coleman the tracts of land (describing them). Easterling agrees to allow Coleman to cut the timber growing thereon, and if necessary, to make advancements to enable him to cut, haul and run the timber to two certain mills, at either of which the timber is to be delivered to Easterling, who is to take charge of it, have it sawed, carried to Darien and sold, and after deducting the expenses thereof, to credit upon the notes of Coleman the net proceeds of the sales, after deducting amounts advanced to Coleman to enable him to cut, haul and run the timber to said mills. Coleman agrees to cut all the marketable timber growing on the lands and deliver it to Easterling at the places mentioned, as fast as he can, and in no event is the timber so cut to be his property until each note mentioned in this contract has been settled in full. He agrees for Easterling to take charge of all such timber, and after deducting the expenses mentioned or the advances made, to then credit the net proceeds upon the notes; and in the event he cuts any of the timber and fails to deliver it to Easterling at the places specified, to forfeit whatever amount he may have paid on the notes and relinquish all claim he may have to the land unto Easterling; and in the event he fails to pay the notes with interest,

v 93-3

by the time they are due, to forfeit whatever amount he may have paid by the cutting, hauling or drifting timber or otherwise, and also relinquish all claim he may have to the land by reason of any payments he may make to Easterling. Easterling agrees, if Coleman will pay the notes when due, with money or anything he will accept in lieu thereof, he will make to Coleman title in fee simple to the land; otherwise it is mutually agreed the contract shall no longer be binding on Easterling.

By amendment Coleman alleged: Said written contract was not signed by the parties, because of the trust and confidence reposed in Easterling by petitioner, who relied upon the declaration made to him by Easterling, that it made no difference whether it was signed or not; and Easterling, finally finding that further deception would not avail, declared that the paper had been destroyed. Said contract was prepared by McGee under Easterling's direction, and expressed the agreement made between the parties. In pursuance and in part performance of it, petitioner made his arrangements to cut and did cut timber until about July 1, 1888, cutting, hauling, drifting and delivering to Easterling three hundred pieces worth $900 or other large sum, which Easterling sold; the exact net receipts from which are unknown to petitioner. Easterling, after he found that petitioner had obtained from McGee a duplicate of said contract, admitted that he had said written contract; and petitioner charges that the contract was to have been presented by Easterling to him for signature; but relying upon the assurance of Easterling that he would present it for signing and have petitioner sign and deliver the notes petitioner was to give, petitioner went to work cutting, hauling and delivering the timber, and Easterling went on making advances for provisions and expenses in drifting and hauling the timber. In this way

the mutual dealings continued during the timber season which ended in July, 1888, when it was mutually agreed that owing to the low prices of timber the cutting would be discontinued.    Thereupon it was agreed between them, that the timber should be leased for turpentine purposes, and the rent therefor, or so much thereof as necessary, be applied to petitioner's indebtedness to Easterling; in pursuance of this agreement the land was so leased, and the very money tendered to Easterling was in pursuance of the agreement to lease and derived from the lease.    This money so tendered was to pay principal and interest of the indebtedness due by petitioner to Easterling, and the tender is continued.

The petition as amended was dismissed on the grounds, that no case for specific performance was made, and that the contract was within the statute of frauds.

GARRARD, MELDRIM & NEWMAN and H. J. McGEE, for plaintiff.    HINES, SHUBRICK & FELDER, for defendant.

LUMPKIN, Justice.

The reporter's statement sets forth, in substance, the allegations of the plaintiff's petition, to the dismissal of which he excepted.    His contract with the defendant not being in writing, it was insisted that it was within the statute of frauds, and therefore not binding.    The allegations of the petition, considered in connection with exhibit "D" thereto, are perhaps sufficient to show there had been such a part performance by Coleman as would take the case out of the statute.    The title to the lands was in Sheppard and McDonald, by virtue of deeds from the sheriff, who had sold the lands as the property of Coleman.    They had agreed to hold the title as security for the purchase money, as well as for other indebtedness of Coleman to them, and to allow Coleman, who continued in possession, an opportunity to redeem the property.    He induced Easterling to settle his in-

debtedness to Sheppard and McDonald, and to take
from them a title to the lands as security, both for the
money paid to them, and for any other sums which, in
the business between Coleman and Easterling, might
become due the latter; and upon payment of the amount
due to him, Easterling was to convey the property to
Coleman, who, in the meantime, was to remain in pos-
session, and who, in fact, did remain in possession.    It
was further agreed, that Coleman was to have two years
in which to redeem the lands, and that he was to cut,
haul, and deliver timber growing thereon at certain saw-
mills owned by Easterling, who was to convert the same
into lumber, sell it, and after deducting expenses, credit
upon the indebtedness of Coleman to him the net pro-
ceeds of the sales.    Coleman, in pursuance of this agree-
ment, did cut and deliver large quantities of timber;
and though the business was not profitable, there was a
small balance due to Coleman arising therefrom.    The
prosecution of this business was either abandoned or
suspended, and Coleman thereupon agreed with Easter-
ling to rent out the lands for turpentine purposes, and
to apply the rents to the payment of his indebtedness
to Easterling.    Taking all these averments as true, it
may be that if the petition had been in other respects
sufficient, it would have been proper to grant the relief
prayed for.

We think, however, that the petition is fatally defect-
ive, because it fails either to distinctly and definitely
allege what the balance due by Coleman to Easterling
was, or to state any good reason why the plaintiff could
not have ascertained and averred what this balance was.
The petition is also defective because it does not aver
that Coleman had tendered to Easterling any specified
sum as the amount or balance due him, which would
certainly be necessary in order to authorize a decree for
specific performance.    The following extracts from the

plaintiff's pleadings contain about all that is material or pertinent concerning the balance due Easterling, or the alleged tender. Even a cursory reading will suffice to show they are altogether too vague and indefinite as to these essential matters. The petition alleges that the petitioner "has never been able to get a full accounting with the said Easterling, but has offered, through D. V. Coleman, on or about the 16th of October, 1889, to pay him, the said Easterling, upon an accounting between them, all the money, principal and interest, due him by this petitioner, which he then and there declined to do, and would not receive the money from this petitioner in full payment of all the debts due him, the said offer being coupled with the demand on the part of this petitioner to have the title to the foregoing lands conveyed to him by the said Easterling"; and also, that petitioner "has done all he could in order to comply with his contract with the said Easterling, in good faith; that he has been and is ready and willing to come to an accounting with him, and pay to him all of the money due to him, as aforesaid, but the said Easterling refuses to receive it." The amendment alleges, that the lands were leased for turpentine purposes, as agreed, and that "the very money tendered to Easterling was in pursuance of this agreement to lease, and was money derived from the lease. This money so tendered was to pay principal and interest of the indebtedness due by your petitioner to defendant, and the tender is continued." Among other things, the petition prays that Easterling may be decreed "to come to an accounting with your petitioner, so that it can be ascertained exactly the sum of money that is due by your petitioner to him, the said Easterling"; and that petitioner "may receive a good and sufficient deed from the said defendant of the said lands hereinbefore set out, upon payment by this petitioner to said defendant of the sum of money so found to be due by him."

We are therefore fully satisfied that the trial court committed no error in holding the petition insufficient in law. Indeed, under the petition as it stands, it does not appear that the plaintiff's action had fully ripened. If he could not ascertain the exact amount he owed Easterling, and which it would be incumbent upon him to pay, or offer to pay, before he would be entitled to demand a conveyance of the lands, he certainly could have ascertained approximately what that amount was, and ought to have tendered a sum at least sufficient to satisfy the indebtedness. This was necessary to complete his right to a conveyance, and consequently, ought to have been done before the action was brought. If a proper tender had been made, and the petition had alleged this fact, the question presented would have been an entirely different one, and it is quite probable the trial judge would then have given the case other and appropriate direction.      *Judgment affirmed.*