·LYONS *v.* BASS *et al.*

1. An agreement resting wholly in parol, whereby one promises to sell to another an interest in land upon tender within a given time of a specified amount, is within the statute of frauds.
2. A resulting trust does not arise in favor of the party to whom such promise is made, merely because, on the faith thereof, he abandons pend-

ing negotiations between himself and the owner of the land and consents that the person making the promise shall himself purchase the land and take title thereto in his own name.

3. Nor, under such circumstances, will a court of equity decree a specific performance of a parol agreement of this character upon the theory that the doctrine of implied trusts can be invoked as against the purchaser.

4. Under the facts appearing in the present case, there was not such part performance on the part of the person to whom the promise was made as would take the parol agreement without the operation of the statute of frauds.

5. As the evidence offered in behalf of the plaintiff the rejection of which is assigned as error was wholly irrelevant to any issue in the case, it necessarily follows that the judgment of nonsuit should be sustained.

Argued June 16, — Decided July 28, 1899.

Equitable petition. Before Judge Henry. Floyd superior court. November term, 1898.

Lyons conveyed certain land to the Georgia Loan and Trust Company as security for a debt, and, being unable to pay the debt when it matured, sought to make an arrangement with the company by which a sale of 108 acres of the land to one Lattimore and another, which he had been negotiating, should be carried out and the purchase-price credited on the debt, and an extension of time granted as to the amount remaining due. It was proposed, in order that the purchasers might obtain title free from certain liens against him, that the land be sold under a power of sale in the company's deed from him; and this was done, the company's representative, Hoskinson, having agreed that, if the company should buy the land, it would carry out the proposed trade as to the 108 acres, and would let Lyons buy back the rest of the property. Hoskinson, in behalf of the company, bought the property at the sale then made, and offered to carry out the agreement with Lyons. The company was to receive for the whole property $1,575; and of this amount $725 was to be paid for the 108 acres, and Lyons was to have five years in which to pay the rest. Subsequently, with the consent of Lyons, the company sold and conveyed the land to Bass, and Lyons surrendered possession of it. Bass sold a part of it to Lattimore, and, after enjoying rents from the remaining portion for upwards of a year, sold what he then had to Giles. Lyons then filed an equitable petition against Bass

and Giles, in which he prayed that Bass be required to perform an alleged agreement with him as to the sale of the land. He alleged that Giles bought with notice of this agreement, and was colluding with Bass to defraud him. The nature of the alleged agreement will appear from the evidence hereafter stated. The court granted a nonsuit, and the plaintiff excepted.

The plaintiff testified that after he had made the arrangement with Hoskinson for the purchase of the land, Bass said to him: "You have gone and offered that company $1,575. I can buy it for $1,175, and make $200 and you $200; though if it wasn't for you I would not pay a dollar for it." Bass then proposed that he would "take the same trade witness had made with Hoskinson, would take the same parties, sell them the same lands, take their notes, and sell witness the balance for the difference between that and $1,175, or $1,375; that all he cared for was the $200, on a cash basis. Witness and Bass then went to Hoskinson's office side by side. . . Witness told Mr. Hoskinson that he had agreed for Mr. Bass to buy the property, and witness would get out of the way and let Bass buy it. That was all that happened that day. Witness went out of the office, and left Bass and Hoskinson talking. . . Hoskinson remarked to Bass, 'Now you must take care of Lyons in this thing.' 'Of course,' Bass said, he would do that. Sometime after that, witness told Bass they had better go into writings about their contract. Bass said he didn't have a deed to it yet. . . 'I can't make you a bond for title. I want to close out the trade with these other parties anyway.' Witness then went with Lattimore to Bass, when the deed was made to Lattimore by Bass. Witness took Lattimore up there to make the trade, and witness made the trade himself. . . After the deed to Lattimore, witness made an attempt a time or two to get his contract reduced to writing. By his first agreement witness was to have five years in which to pay Bass, the same as the Georgia Loan and Trust Company. After the extension(?) of the deed, in order to obtain a written contract from Bass, witness went to Bass, and told him they had better go into writing; that witness did not doubt that he (Bass) would do what he said he would; that he had always done what he said he would. Wit-

ness told him probably they both might die, and witness would like to have some showing. Bass said, 'You needn't be uneasy. . . You know Mr. VanDyke has got a judgment against you, and I think it would be best to let it go along till fall.' Witness don't believe he made any further effort to get his contract reduced to writing. . . Bass notified witness just a few days before he sold to Giles. He told witness if he wanted to buy it he (witness) had better get him up $200 and sell the balance on time, or get him up $800 in cash by a certain time. Witness got up the money after so long a time. It was on the 29th or 30th of October. Witness made Bass a tender of the $800 in gold. He demanded $800; he didn't demand any more. . . Bass was present when the tender was made. Bass looked at the money and refused it. Bass then told Giles that he could not make him a bond for title that day. Don't remember whether he stated any reason. The tender was made on the 29th or 30th of September, 1897. Sometime in September Bass offered to give witness thirty days notice if he decided to sell it; thinks it was the last time witness went to see Bass about it. Nothing had been said to him about that before."

*Nat Harris, J. H. Hoskinson,* and *M. B. Eubanks,* for plaintiff.
*W. S. McHenry,* for defendants.

Fish, J. 1. As will readily be perceived from the facts set forth in the official report, the agreement sought to be enforced by the plaintiff was one clearly falling within the statute of frauds. Civil Code, § 2693.

2. The mere fact that, relying upon this agreement, he abandoned pending negotiations between himself and the Georgia Loan & Trust Company touching a sale to him by that company of the land in question, will not justify a holding that when Bass, in pursuance of his understanding with Lyons, subsequently became the purchaser, a resulting trust immediately arose in favor of the latter. *Roughton* v. *Rawlings,* 88 *Ga.* 819. As we shall presently endeavor to show, Lyons parted with nothing save a bare privilege, not exclusive but which he enjoyed in common with all other persons

who might wish to negotiate with the company, of becoming a purchaser from it on terms to it satisfactory.

3. Nor is there any merit in the suggestion of counsel that "if Bass intended to deceive Lyons and get him out of the way by appearing to act for him, this would raise an implied trust in Lyons's favor and compel the execution of a deed by Bass." In this connection, attention is called to section 3159 of the Civil Code, and to the cases of *Adams* v. *Jones*, 39 *Ga.* 479; *Rives* v. *Lawrence*, 41 *Ga.* 283, and *Johnson* v. *Giles*, 69 *Ga.* 652. Clearly, however, none of the definitions of implied trusts given in the section of the code cited can properly be said to comprehend a case such as the present; nor are the previous adjudications of this court to which reference is made at all pertinent, upon their peculiar facts, to the case before us. In no sense did Bass undertake to act as the agent of Lyons and buy for him the tract of land purchased from the Georgia Loan & Trust Company. The understanding was, on the contrary, that Bass should act for himself alone in making the purchase, furnish all the money, and take title in his own name to the entire tract. Lyons desired only a part of the tract, and Bass merely gave his oral promise that if he purchased the entire tract he would sell this part to Lyons whenever the latter, within a period of five years, tendered payment of an agreed price therefor. Save that Bass subsequently refused to comply with this parol promise, he neither did, nor omitted to do, a single thing in disregard of the understanding between himself and Lyons. Accordingly, the only fraud involved in the case is such moral fraud as necessarily attends every instance where one declines to carry out a contract not legally binding upon him because within the operation of the statute.

4. Counsel for the plaintiff further very earnestly insisted, however, that there had been such part performance on his part of the parol agreement upon which he relied as to take the present case clearly outside of the statute of frauds. We analyze the evidence introduced in support of this contention as follows: Lyons was unable to pay his debt to the Georgia Loan & Trust Company, and, upon its promise to allow him

to purchase a portion of the land pledged as security, agreed that it be brought to sale. The company had a right to sell the land independently of his consent, and its promise to him was without consideration, and although, it seems, its manager stood ready in good faith to carry out this promise, the same was incapable of legal enforcement, for the additional reason that it came within the statute of frauds. Lyons had a parol understanding with other parties, whereby they agreed to buy for themselves portions of the land he did not desire to purchase, but, for a like reason, they were not bound to do so. Agreements of this character are not, in legal contemplation, of any value, and can not be assigned. Therefore, when Lyons gave up his intention of carrying into effect the arrangement whereby he and the other parties last referred to were to jointly buy from the company the entire tract, he parted with nothing but his naked right to compete with Bass and all other persons in negotiating for a purchase of either the whole or only a portion of the land, in which Lyons could no longer claim any interest whatever, as it then belonged absolutely to the company. He went with Bass to its manager and told the latter he would not, in view of the agreement made with Bass, any longer hold it to its promise; but no legal right was thereby relinquished by Lyons, and his consent to a sale by the company to Bass had no significance or effect other than to relieve the company of a purely, moral obligation, as has been seen. Lyons yielded up to Bass possession of the premises, and, as a consequence, the latter enjoyed the rents accruing therefrom for, and since, the year 1896. Yet, as Lyons was at the time a mere tenant at sufferance of the company, and the enjoyment of rents is a necessary incident to ownership, we fail to perceive how the circumstances just detailed can in any sense be regarded as part performance by him of the parol agreement he seeks to have enforced. As matter of fact, so far as the record before us discloses, the only performance on his part contemplated by this agreement was tender of the agreed purchase-price of the land which Bass promised to sell; and though such tender was made within the time limited, he positively declined to accept any portion of the

purchase-money. "Mere non-action is not performance, either partial or complete, and will not, therefore, take a parol contract out of the statute of frauds." *Augusta Southern R. Co.* v. *Smith & Kilby Co.*, 106 *Ga.* 864. This statement of a well-known principle applies with peculiar force to the facts of the case at bar.

A brief review of the several decisions of this court cited and relied on by the plaintiff as authority for his position will suffice to show that they have little or no bearing upon the question here presented. In *Morgan* v. *Battle*, 95 *Ga.* 663, there was full performance on the part of the complaining party; and in *Fontaine* v. *Baxley*, 90 *Ga.* 416, and *Coleman* v. *Easterling*, 93 *Ga.* 29, partial performance was clearly and unequivocally established. The contract relied on in *Perry* v. *Paschal*, 103 *Ga.* 134, was in writing, and the only question raised was whether or not it rested upon a sufficient consideration. This comment may, perhaps, also apply to the case of *Mathews* v. *Starr*, 68 *Ga.* 521; for it does not appear that the contract was not in writing, and the only question passed upon was as to the sufficiency and legality of the consideration. But even if the agreement there upheld was one in parol, that case, upon its facts, is distinguishable from the case with which we are now called upon to deal; for it appeared that Starr was the owner of property about to be sold by the sheriff, and, in pursuance of an agreement whereby Mathews was to become the purchaser without competition in bidding on the part of Starr, the latter yielded up his substantial right of either making arrangements to pay off the fi. fa. under which the property was brought to sale, or attending the sale and bidding on the property with a view to making it bring its full value. At any rate, the statute of frauds was not even incidentally alluded to, and, this being true, the decision announced in that case not only does not control, but is really not even pertinent to, the question now in hand. Upon its facts, the case of *Kerr* v. *Hammond*, 97 *Ga.* 567, is quite similar to the one at bar. The circumstance should not be overlooked, however, that it appears from the opinion of Chief Justice Simmons (page 569) that: "At the conclusion of the

plaintiff's evidence, the trial judge, on motion of the defendant, granted a nonsuit on the ground that there was no continuing tender and ·no payment into court of the plaintiff's part of the purchase-money." This court ruled, merely, that under the circumstances disclosed by the evidence, the plaintiff should not, for the reason urged by defendant's counsel and assigned by the trial judge, have been nonsuited. No other question was raised or passed upon, either in the court below or in this court. A casual reading of the opinion delivered by the Chief Justice will disclose that he confined his discussion strictly to the single point made, and carefully refrained from even intimating how the court viewed the evidence bearing upon other questions which might have been, but were not, presented for adjudication.

5. Aside from the judgment of nonsuit rendered in the present case, the only ruling complained of was the refusal of the trial judge to allow the plaintiff to introduce "in evidence a paper, of date July 15, 1896, from C. C. Bass to the Georgia Loan and Trust Company, in which said Bass disclaimed, as against the said company, all right he might have to claim possession of the Lyons land from said company." Obviously, the evidence offered was totally irrelevant to any issue in the case, and further discussion in regard thereto would be wholly unprofitable.

*Judgment affirmed. All the Justices concurring.*