RAY *et al. v.* UNION SAVINGS BANK & TRUST CO. *et al.*

The petition did not set forth a cause of action for aiding and assisting a trustee, with knowledge of his misconduct, in the misapplication of trust property, and was properly dismissed on general demurrer.

AUGUST 22, 1911.

Equitable petition. Before Judge Felton. Bibb superior court. February 24, 1910.

Clifford E. Ray, Thomas J. Ray, and J. L. Watson as guardian for Bolivar H. Ray Jr., Lucile, Ruth, Marvin, and George Ray, minors, filed their petition against the Union Savings Bank and Trust Company and Bolivar H. Ray Sr. The substance of the petition as amended and now material was as follows: The minors represented by Watson, and the other two plaintiffs, are all the children of Bolivar H. Ray Sr., and his wife Carrie I. Ray, who died in 1893. On August 1, 1893, the defendant Ray, as trustee for his wife and their minor children, bought from Mrs. Shellman a described house and lot at the price of $5,400, all of which he paid except $1,800. Mrs. Shellman subsequently sued Ray, as trustee, for the balance of the unpaid purchase-money due for the property, obtained judgment, and had the property sold at sheriff's sale. Ray as trustee arranged with Plant that the latter should bid in the property at the sheriff's sale for the benefit of Ray as trustee, Plant agreeing to convey the property to Ray as trustee, upon the payment by him to Plant of the amount of the latter's bid.

On July 26, 1897, Plant conveyed the property by quitclaim deed to Ray as trustee for his wife, and at her death, then in trust for their children. In the language of this deed, Ray as such trustee was given "full power and authority to sell, mortgage, or otherwise encumber all or any part of said property at his discretion, either publicly or privately, and on such terms as the trustee may prefer, and without the necessity of any order of court therefor." In order to obtain the money with which to pay off Plant's bid for the property, Ray as trustee borrowed from Mrs. Roush $2,400, and to secure the payment of this loan he as trustee, on July 26, 1897, executed to Mrs. Roush a security deed to the property.

On April 22, 1898, Ray borrowed $2,500 from the Union Savings Bank and Trust Company for the purpose of paying his individual indebtedness, and on the same date executed to this company a "second mortgage" on the property to secure the loan. The negotiation for this loan was had between Ray and Cabaniss, who was at the time president both of the Union Savings Bank and Trust Company and of the Exchange Bank of Macon; and it was then agreed between Cabaniss as president of the Union Savings Bank and Trust Company, and Ray as trustee, that the loan should be made by this company to Ray as trustee, and that it should be secured by

a mortgage upon the property, in question, to be executed by Ray, as trustee, to the company, and that when the transaction should be completed Ray should deposit the money so loaned in the Exchange Bank of Macon to meet certain of his individual debts, with which the trust estate had no connection. In the language of the petition, "Both the Union Savings Bank and Trust Company and the Exchange Bank of Macon, Ga., had a business and financial interest in the individual obligations of said Ray which are herein referred to, and in the payment of said obligation $1,050 of that sum was directly due by said Ray to the Exchange Bank of Macon, Ga., and the other sums, which along with the $1,050 made up the total of $2,500, were due and owing to certain regular customers of the Exchange Bank of Macon, Ga., and the Union Savings Bank and Trust Company. The said B. H. Ray was not, either individually or as trustee, permitted to handle the $2,500 so borrowed, but the same was by the said J. W. Cabaniss applied to the individual obligation of B. H. Ray to said banks and to the customers of said banks. By reason whereof petitioners allege that the said J. W. Cabaniss, as president of the Union Savings Bank and Trust Company, did aid and assist the said B. H. Ray, as trustee aforesaid, with full knowledge of the misconduct of the said B. H. Ray, as trustee, etc., in misapplying the assets of his trust estate, which was intended and should have been used for the benefit of petitioners." On December 6, 1898, Mrs. Roush, by virtue of the power of sale contained in the security deed executed to her by Ray as trustee, advertised and sold the property in question, and, in the language of the petition, "the said Union Savings Bank and Trust Company, by agreement with the said B. H. Ray, trustee, bid off said property at said sale for the benefit of the trust estate, taking thereto a deed from the said Kate M. Roush, paying her the sum of $2,669.-96, being the balance of the purchase-money due and owing by the said trustee for said property." This agreement was in parol, and was made by the Union Savings Bank and Trust Company through its president, Cabaniss, it being part of the agreement so made with such company to purchase the property for the protection of the trust estate, and that it might be redeemed within a reasonable time by the trustee for such estate. In the language of the petition, "by reason of the parol agreement, . . the said Union Savings Bank and Trust Company had no competitors at said sale,

and the said trustee did not make any effort to obtain competitive bids for said property, or to make said property bring at said sale its full value, which petitioners allege was, at all the times mentioned in this petition, worth $5,000 or more, and would have brought the sum of $5,000 at forced sale." It was further alleged, that, "by reason of the fact that Cabaniss, as president of the Union Savings Bank and Trust Company, had induced Ray, as trustee, to give that company the second mortgage on the trust property, the trustee was unable to arrange a sale of the property so as to realize a surplus above the amount due Mrs. Roush, or to borrow money with which to pay it." On March 3, 1899, the Union Savings Bank and Trust Company and the defendant Ray, "conspiring together to defraud said trust estate, entered into an agreement by which the said Union Savings Bank and Trust Company was to take, hold, and use said trust property as its own, at and for the agreed price of $5,000, the payment of which consisted in the Roush debt, including interest and expenses, the sum of $2,759.65, leaving a balance of $2,240.35, which was appropriated as a credit upon said debts held by the Union Savings Bank and Trust Company against said Ray, as trustee, for the said sum of $2,500.00, made on April 22, 1898, as hereinbefore described, and leaving a balance still outstanding upon said debt of $468.56, for which amount the Exchange Bank of Macon took the individual note of the said B. H. Ray, on March the 10th, 1899, and thereupon cancelled and surrendered the said note for $2,500.00 dated April 22nd, 1898, payable to the said Union Savings Bank and Trust Company and signed by said B. H. Ray, trustee for his wife and children." It was alleged, that the Union Savings Bank and Trust Company, in order to further cover up the fraudulent scheme to deprive petitioners of their rights in the property in question, had sold and conveyed the same to an innocent purchaser; that at the date of filing the petition, the eldest of the petitioners was 22 years old; and that the petitioners, "by the fraud of the defendants and by reason of defendants' conduct as herein described, and by reason of their tender age, were prevented from knowing of their rights in the premises, and of the fraudulent conduct of the defendants, until at least one of them reached the age of maturity." There was a prayer for the recovery of the sum of $2,240.35, which was alleged to be "a trust fund in the hands of the said Union Savings Bank

and Trust Company, with full knowledge that the same belonged to petitioners, and which the said bank undertook to aid the said trustee in misappropriating, by using the same in the settlement of the individual debts of the said trustee, and thereby defeat the petitioners' rights to the same."

The petition was demurred to by the Union Savings Bank and Trust Company, upon the following grounds: (1) because it sets forth no cause of action against this defendant; (2) because the purpose of the petition is to engraft upon the property described therein a trust in favor of the plaintiffs, and the allegations are not sufficient either to create an express trust or to raise an implied trust; (3) because the petition seeks to engraft an express trust upon a written deed by parol, and there can be no parol trust in land, and no express trust can be created by parol; (4) that, from the allegations of the petition, the land therein described was not purchased with any money belonging to the petitioners, and it appears that they have parted with nothing which they ever possessed or owned; (5) that the agreement set forth in the petition concerned an interest in and the sale of land, and was within the statute of frauds, and should therefore have been in writing; (6) that the alleged verbal agreement having been made in the year 1899 and suit entered thereon in 1909, ten years thereafter, the trustee was barred and the cestuis que trustent are also barred; (7) because under the allegations of the petition the right of action, if any exists, is in B. H. Ray as trustee for his wife and children, and not the petitioners. The court sustained the general demurrer and dismissed the case; to which ruling the plaintiffs excepted.

*Hall & Hall* and *L. D. Moore,* for plaintiffs.

*Lane & Park,* for defendants.

Fish, C. J. (After stating the facts.) "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured." Civil Code (1895), § 3200, Ib. (1910), § 3784. "One who purchases from a trustee who has authority to sell acquires a title to the property sold; and the title thus acquired is not affected by the subsequent conduct of the purchaser in knowingly aiding the trustee in a misappropriation of the proceeds of the sale, unless such misappropriation be the result of an arrangement be-

tween the purchaser and the trustee before the sale is completed, or the purchaser know that the trustee is selling for the purpose of misappropriating the proceeds. A purchaser who buys in good faith from a trustee, and subsequently aids the trustee in misappropriating the purchase-money, is liable to the person injured by the misappropriation; but such conduct does not invalidate his title to the property acquired under the sale by the trustee." *Tapley* v. *Tapley,* 115 *Ga.* 109 (41 S. E. 235). It is contended for the beneficiaries under the trust deed from Plant to Ray as trustee, whom we will designate as the plaintiffs, that, applying the provisions of the code section above quoted and the ruling in the case cited to the facts alleged in the petition, a cause of action was set forth against both of the defendants. The trustee, under the power given him in the deed from Plant to sell or encumber the trust property in his discretion without an order of court, was not authorized to execute the mortgage on the trust property to secure the payment of the loan made by the Union Savings Bank & Trust Company to the trustee in accordance with the agreement between the company and the trustee that the money so loaned should be deposited in another bank and paid out in the satisfaction of the individual indebtedness of Ray, who was trustee, due the bank last referred to and to other creditors of Ray, who were customers of such bank and the defendant company. See *Maynard* v. *Cleveland,* 76 *Ga.* 52 (4); *Cohen* v. *Parish,* 105 *Ga.* 339 (2), 345 (31 S. E. 205). The conduct of the Union Savings Bank & Trust Company in respect to this transaction was certainly an effort on its part to aid and assist the trustee in the misapplication of the trust property, not only with full knowledge of his misconduct, but in compliance with an express agreement with the trustee that the company should actually take part in the misapplication. Therefore, if the action of the company as to this matter eventuated in injury to the plaintiffs, the company is directly accountable to them for it. We do not perceive, however, any resultant injury to the plaintiffs from this transaction alone. The possession and ownership of the note, given by the trustee to the company for the loan which it was mutually agreed should be used in the payment of his individual indebtedness and which was so applied, as well as that of the mortgage executed by the trustee to the company to secure the payment of such note, were retained by the company, and no effort was

ever made to subject the trust property to satisfy the same. The note and mortgage in the hands of the company were invalid as against the trust estate, and the mere giving of the same, in the circumstances, to the company by the trustee, without more, did not cause any injury to the plaintiffs. But it is alleged in the petition, that, "by reason of the fact that Cabaniss, as president of the Union Savings Bank & Trust Company, had induced Ray, as trustee, to give that company the second mortgage on the trust property, the trustee was unable to arrange a sale of the property so as to realize a surplus above the amount due Mrs. Roush, or to borrow money with which to pay it." In the absence of an averment that the trustee made an effort to sell the property, or to borrow money for such purpose, which was unavailing by reason of the fact that the mortgage had been given, the allegation quoted above amounts to no more than the conclusion of the pleader that the effect of the execution of the mortgage was necessarily to prevent the trustee from selling the property or borrowing money for the purpose indicated. We do not think that such result necessarily followed, but, even if it did, we do not perceive how the trust estate was injured merely because the trustee, by reason of the execution of the mortgage, was unable to arrange a sale of the property so as to realize a surplus above the Roush debt or to borrow money with which to pay it. If these were the only results of the giving of the mortgage—if the matter ended here, no damage to the trust estate appears. Ray's individual debts were paid with the money loaned him by the company for that purpose, and he as trustee gave the company a mortgage on the trust property to secure the loan, but by this transaction alone the company did not get any of the property belonging to the trust estate, nor was any of the trust property misapplied to the injury of the trust estate. The money so borrowed was Ray's individual money, and was appropriated to the payment of his individual indebtedness.

Nor do we think that the defendant company was bound for aiding and assisting the trustee in the misapplication of the property of the trust estate, nor that it injured the plaintiffs, the beneficiaries of such estate, by purchasing the property at the sale made by Mrs. Roush, under the power given her in the security deed executed by the trustee. As one who purchases in good faith from a trustee who has authority to sell acquires the title to the

property sold, it must follow that where a trustee is authorized to encumber property by executing a deed thereto for the purpose of securing a loan with which to discharge a prior encumbrance on the property, a sale duly made by the grantee, upon whom such power was conferred in the security deed, was legal, and the purchaser under such sale acquired title to the property sold, in the absence of fraud on his part. The defendant company was not charged with any fraud in purchasing the property under the Roush sale, it being merely alleged that under a parol agreement between the trustee and the company the latter purchased the property for the benefit of the trust estate; that is, that the company agreed in parol to purchase the property for the protection of the trust estate, and that it might be redeemed within a reasonable time by the trustee; that the company purchased the property at the sale for $2,669.96, being the balance of the purchase-money due Mrs. Roush for the property by the trustee, and took a deed from her to the property which was then worth $5,000. There is no allegation that this agreement between the trustee and the company was collusive and made for the purpose of misapplying the property of the trust estate, or in any way injuring the cestuis que trustent. In fact there was no misapplication of the proceeds of the sale, for they went to pay the debt due by the trust estate to Mrs. Roush. There was no averment of any offer by the trustee to redeem; and even if there had been, the company was not legally bound to comply with its oral agreement to allow the trustee to redeem the land or to reconvey it to him upon the payment of the amount the company had paid for it at the sale, as the contract was for the sale of, or concerning, land. Civil Code (1895), § 2693 (4); Ib. (1910), § 3222 (4); *Lyons* v. *Bass,* 108 *Ga.* 573 (34 S. E. 721). The defendant got a legal title to the land under the sale. The proceeds of the sale were not misapplied, and the company was not legally bound to reconvey the property to the trustee. This being true, we do not perceive how the company, in the absence of any fraud in the transaction, can be made liable, on the theory of aiding and assisting the trustee in the misapplication of trust funds, for the difference between the real value of the land at the time of the sale and the amount at which it was bid off.

Was a cause of action set forth by the allegations, that, after

the defendant company had purchased the land at the Roush sale in December, 1898, in March of the succeeding year the company and the trustee conspired together to defraud the trust estate by entering into an agreement by which the company "was to take, hold, and use said trust property as its own, at and for the agreed price of $5,000.00, the payment of which consisted in the Roush debt, including interest and expenses, the sum of $2,759.65, leaving a balance of $2,240.35, which was appropriated as a credit upon" the note of $2,500, which had been given by Ray, as trustee, on April 22, 1898, for the loan with which to pay his individual debts, and the giving to the Exchange Bank of Macon, by Ray, the trustee, of his individual note for the balance, viz., $468.50, which agreement was carried out, and a subsequent sale of the property made by the company to an innocent purchaser? As we have seen, the bank had a legal title to the property, and therefore could dispose of it as it pleased. There was no allegation that the agreement last referred to constituted any part of the agreement between the trustee and the company that the latter should purchase the property at the Roush sale, nor is there anything in the petition tending to show that the trustee and the company intended, at the time of such sale, that this last agreement would be entered into. As we have said, the legal title to the property was in the company, and it could have sold and conveyed it to any one without allowing any credit on the note given by Ray, as trustee, for the loan with which to discharge his individual debts. The allowing of the credit on such note was therefore a mere gratuity on the part of the company. Our conclusion is that there was nothing in this last transaction which constituted a misapplication by the bank of the trust property, nor anything showing that the company aided or assisted the trustee in the misapplication of trust funds or property. There was nothing in the petition going to show that the three transactions therein set forth, and which we have discussed, constituted a scheme between the trustee and the defendant company to defraud the trust estate; but it appeared, so far as the petition showed to the contrary, that such transactions were separate and distinct; nor was the property of such estate thereby misapplied by the trustee, with the aid or assistance of the defendant company, and to the injury of the plaintiffs. It follows,

therefore, that the petition did not set forth a cause of action and that it was properly dismissed on general demurrer.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*